# State of Vermont v. Roy B. Laflin

# State of Vermont v. Vaughn R. Laflin

[627 A.2d 344]

Nos. 92-162 and 92-197

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed April 9, 1993

*Edward D. Sutton*, Chittenden County Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Karen Rush Shingler*, Burlington, for Defendant-Appellant Roy B. Laflin.

*Norman R. Blais*, Burlington, for Defendant-Appellant Vaughn R. Laflin.

**Gibson, J.** Defendants pled nolo contendere to misdemeanor violations of 10 V.S.A. § 4747 (taking big game) and 10 V.S.A. § 4781 (possessing big game), reserving the right to appeal the district court's denial of their motions to suppress. They argue that their arrests without warrant constituted violations of

V.R.Cr.P. 3 and the Fourth Amendment to the United States Constitution and, therefore, evidence seized pursuant to the arrests must be suppressed. We reverse.

On September 18, 1991, state game wardens received an anonymous tip that defendant Vaughn Laflin was engaged in taking big game on the National Guard firing range in Jericho. The wardens located defendant's truck later that evening and waited nearly four hours until it left the area. They then proceeded to Vaughn's residence, where they discovered the same truck parked in the driveway.

The wardens could hear two voices in an outbuilding located on the premises, but because the windows were boarded up, they could see only shadows from interior lights. They also noticed fresh blood and tallow in both the truck bed and on the threshold to the outbuilding. One of the wardens knocked on the door of the building and identified himself. When he received no reply, he announced through the closed door that he was applying for a search warrant, and that they could choose to remain inside or come out. When there was still no response, he latched the door to the shed from the outside, thus locking the occupants in the building. The wardens then contacted a deputy prosecutor by cellular telephone to procure a warrant.

Approximately one hour after the officials had arrived at the scene, one of the officers noticed that Vaughn had opened a window in an attempt to reach the latch on the door. Vaughn said to the officer, "What, do you have us locked in?" The officials then unlatched the door and ordered Vaughn out of the building. Vaughn opened the door and was again told to come out. The four officers had their guns drawn, and the cruiser headlights were turned on the building throughout the incident. Vaughn exited and was handcuffed.

Through the open door, the officers could see the hindquarters of a moose in the building. They entered the structure to conduct a "security sweep" and noticed several items, including a large piece of fur, knives, a whetstone and saw, a gambrel used to hoist a large carcass to the ceiling, and a trap door in the ceiling. One of the officers pushed on the trap door, felt resistance, and ordered the person pushing on the door to come out. The door opened, and the officials repeated their order. Roy Laflin climbed out of the opening, whereupon he was hand-

cuffed. The wardens seized the moose hindquarters and the truck. After obtaining biographical information from the two men, the officers issued citations and released them.

Defendants moved to suppress the evidence seized on the grounds that their warrantless arrests were in violation of V.R.Cr.P. 3 and the Fourth Amendment to the United States Constitution. The trial court denied the motion. It held that the officers had probable cause to believe that the defendants had committed a misdemeanor under the fish and wildlife laws after discovery of blood and tallow in the bed of the truck and on the outbuilding threshold, but noted that "the police did not see the crime committed." Nevertheless, the court concluded that the officers were authorized to demand that the occupants come out of the building under V.R.Cr.P. 3 in order to identify them, and under the Fourth Amendment due to exigent circumstances.*

On appeal, defendants argue that the trial court erred in concluding that neither the Fourth Amendment nor V.R.Cr.P. 3 required a warrant to seize defendants or to search Vaughn Laflin's home and seize evidence. V.R.Cr.P. 3(a) provides in part:

> A law enforcement officer may arrest without warrant a person whom the officer has probable cause to believe has committed a crime in the presence of the officer. . . . An officer may also arrest a person without warrant . . . (3) when the officer has probable cause to believe that a person has committed a misdemeanor and the person has refused to identify himself or herself when requested by the officer.

■ Neither of these exceptions to the warrant requirement is applicable in this case. The court did not find that "a crime was committed in the presence of the officer," nor did it find that defendants refused to identify themselves. Indeed, the court did not even find that the officers requested identification. Because the court's conclusion that the warrantless arrests were authorized under V.R.Cr.P. 3(a) is not supported by its findings, we hold that the arrests of both defendants violated V.R.Cr.P. 3.

---

* Because we conclude that both the arrests and the seizure of evidence were invalid under V.R.Cr.P. 3, we do not reach defendants' constitutional claim.

■ ■ Generally, suppression of evidence is mandated if seized in violation of the Fourth Amendment. *State v. Ball*, 123 Vt. 26, 28–29, 179 A.2d 466, 468 (1962). Similarly, if the search occurs incident to an arrest which is in violation of the Fourth Amendment, the evidence must be suppressed as fruit of the poisonous tree. *State v. Meunier*, 137 Vt. 586, 589, 409 A.2d 583, 585 (1979). The issue in the instant case is whether evidence that is seized pursuant to an arrest in violation of V.R.Cr.P. 3 must also be suppressed.

On its face, V.R.Cr.P. 3 does not require exclusion of evidence. Absent explicit direction, courts apply the exclusionary rule "when the provision in question confers a substantial right, especially if it is one which can be said to relate rather closely to Fourth Amendment protections." 1 W. LaFave & J. Israel, Criminal Procedure § 3.1, at 146 (1984); see, e.g., *Gossett v. State*, 188 So. 2d 836, 839 (Fla. Dist. Ct. App. 1966) (warrantless misdemeanor arrest which violated state statute similar to V.R.Cr.P. 3 mandated suppression of evidence); *State v. Davis*, 666 P.2d 802, 809 (Or. 1983) (laws designed to protect against illegal searches and seizures are to be given effect by denying state use of evidence secured in violation of those laws); *State v. Valdez*, 561 P.2d 1006, 1011 (Or. 1977) (suppressing evidence seized in violation of state statute which protected interests of the kind protected by the Fourth Amendment). "So far, the only practical method which has been devised to protect rights of this kind is exclusion of the evidence which is the fruit of the violation. Otherwise, the statute can and will be ignored with impunity." *Valdez*, 561 P.2d at 1011.

■ We hold that V.R.Cr.P. 3 was designed to both codify and enhance protections conferred by the Fourth Amendment, and that therefore the evidence seized should be suppressed under the exclusionary rule doctrine. See *State v. LeBlanc*, 149 Vt. 141, 145, 540 A.2d 1037, 1040 (1987) (suppressing evidence obtained as a result of unauthorized arrest).

*Reversed and remanded.*