### State of Vermont v. Michael Forcier

[643 A.2d 1200]

No. 92-530

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 20, 1994

*Michael P. Harty*, Windham County Deputy State's Attorney, Brattleboro, and *Gary Kessler*, Supervising Appellate Prosecutor, Montpelier, for Plaintiff-Appellee.

*David G. Reid*, Brattleboro, for Defendant-Appellant.

**Johnson, J.** Defendant pled nolo contendere to a misdemeanor violation of 23 V.S.A. § 1201(a)(2), driving while intoxicated (DWI), reserving the right to appeal the district court's denial of his motion to suppress pursuant to V.R.Cr.P. 11(a)(2). Defendant argues on appeal that all testimonial and nontestimonial evidence stemming from his DWI arrest must be suppressed because the officers exceeded the arrest authority provided by V.R.Cr.P. 3(a)(5) in that they: (1) arrested defendant more than two hours after the alleged offense occurred; and (2) interrogated defendant after they arrested him. We reverse and remand because the V.R.Cr.P. 3(a)(5) arrest for DWI did not give police authority to interrogate defendant.

On March 29, 1991, defendant was involved in a two-car automobile accident at 9:44 p.m. State police responded to the scene and were advised by the operator of the other vehicle that defendant had left

the scene of the accident and travelled to his home, which was approximately two miles away. Two state troopers went to defendant's home and encountered defendant when he exited his home from a back porch. The officers observed evidence of defendant's intoxication. Upon questioning, defendant admitted to having operated his vehicle and was requested to produce his license, registration and proof of insurance, which he did.

A third officer, Trooper Favreau, arrived at the scene. He administered an alco-sensor test and requested that defendant perform dexterity tests. Defendant's performance indicated substantial impairment; defendant's speech was slurred, his walking was unsteady, and he stumbled. Defendant admitted in response to questioning that he had had four beers and that the time of his last drink was about an hour earlier, around 9:30 p.m.

At 11:10 p.m., defendant was placed in handcuffs and transported to the police barracks in a cruiser. Trooper Favreau testified at the suppression hearing that although he could not remember exactly what he said to defendant at that time, he told defendant he was in custody for driving while intoxicated. At the barracks, defendant was given *Miranda* warnings and, after waiving counsel, he was interrogated. The interrogation yielded "substantial incriminating evidence." The officers also read the Implied Consent Form to defendant; defendant consented to the breath sample and declined the offer to contact an attorney. The officers collected the sample at 11:45 p.m. Trooper Favreau entered on the arrest form that defendant was formally arrested at 11:50 p.m. The trooper subsequently issued a citation to defendant for DWI and leaving the scene of an accident (LSA) and released defendant.

On appeal, defendant argues that his arrest and subsequent interrogation exceeded the scope of arrest authority provided by V.R.Cr.P. 3(a)(5). Rule 3(a)(5) is an exception to the general rule that an officer cannot arrest a person without a warrant for a misdemeanor that was not committed in the officer's presence. See generally V.R.Cr.P. 3(a). Specifically, Rule 3(a)(5) provides:

> An officer may also arrest a person without a warrant . . . (5) when the officer has probable cause to believe a person has committed or is committing a violation of 23 V.S.A. § 1128 [LSA] or 23 V.S.A. § 1201 [DWI]. *An arrest under this subdivision shall be made within two hours of the time the alleged offense was committed, and not thereafter.* In the case of an arrest under this subdivision for an alleged violation of 23 V.S.A.

§ 1201, the person may be detained *only for the limited purpose of obtaining a sample of breath or blood.*

(Emphasis added.) Because "V.R.Cr.P. 3 was designed to both codify and enhance protections conferred by the Fourth Amendment," the remedy for violation of Rule 3 is suppression of the evidence seized under the exclusionary doctrine. *State v. Laflin,* 160 Vt. 198, 201, 627 A.2d 344, 346 (1993).

## I.

Defendant's first argument is that he was formally arrested more than two hours from the time of the alleged offense and therefore his arrest was not authorized by V.R.Cr.P. 3(a)(5). Defendant's argument is based on the fact that Trooper Favreau entered 11:50 p.m. as the time of "formal" arrest, though the alleged offense was committed at 9:44 p.m. The trial court, however, found that defendant was arrested by Trooper Favreau at 11:10 p.m. when the trooper placed defendant in handcuffs, told defendant he was in custody for DWI, and placed defendant in a police cruiser for transport to the police barracks. We agree with the trial court. A suspect is arrested when the suspect's liberty is restrained or the suspect submits to the officer's authority. *State v. Blaine,* 133 Vt. 345, 351, 341 A.2d 16, 20 (1975). Here, within two hours of the alleged offense, defendant was actually restrained by Trooper Favreau and told he was in custody for DWI. Trooper Favreau's notation of a time beyond the two-hour limit as the arrest time on the arrest report did not nullify the occurrence of the arrest at 11:10 p.m.

## II.

Defendant's second argument is that the officers exceeded the scope of the arrest authority provided by Rule 3(a)(5)—that "the person may be detained only for the limited purpose of obtaining a sample of breath or blood"—by interrogating defendant to obtain testimonial evidence. Defendant contends that this abuse of the limited arrest authority rendered the entire detention illegal and, therefore, both the testimonial evidence and the breath sample must be suppressed.

Rule 3(a)(5) was not promulgated by this Court; it was enacted by the Legislature. 1987, No. 269 (Adj. Sess.), § 1. The overriding objective of statutory construction is to ascertain the intent of the legislature. *State v. Wilcox,* 160 Vt. 271, 275, 628 A.2d 924, 926 (1993).

Where the meaning of a statute is plain on its face, the statute must be enforced according to its express terms. *Id.* Nonetheless, we avoid interpretations that would lead to "an unjust, unreasonable and absurd consequence." *O'Brien v. Island Corp.*, 157 Vt. 135, 139, 596 A.2d 1295, 1297 (1991).

The language of Rule 3(a)(5) is plain and unambiguous. If the arrest is for DWI, the arrest can be used for one purpose only—"the limited purpose of obtaining a sample of breath or blood." This reading is supported by the Reporter's Notes to the rule, which provide in relevant part that:

> The rule . . . limits the authority to arrest by stating that in arrests for alleged driving while under the influence, "the person may be detained only for the limited purpose of obtaining a sample of breath or blood." Thus an arrest for violation of 23 V.S.A. § 1201 must terminate once this testing has been completed, *and the detention can be utilized for no other purposes.* This is a substantial limitation. Testing results have only limited admissibility without information as to drinking history, usually obtained by questioning the suspect.[*]

Reporter's Notes, V.R.Cr.P. 3(a)(5), 1988 Amendment (emphasis added).

Seizing on this last sentence of the Reporter's Notes, the State argues that a literal reading of the rule would be an irrational construction because the value of the test without information about the suspect's drinking history is limited. In addition, according to the State, a literal reading of the rule would lead to the absurd result that an arresting officer could not even apprise a suspect of the rights under law surrounding the taking of the test. Instead, the State argues that Rule 3(a)(5) enables officers to detain persons suspected of DWI outside the presence of the officers, "long enough to investigate, reaffirm the probable cause, [and] administer an evidentiary test along with the attendant 'processing' . . . ." The State's argument overstates the limits of the plain meaning of the rule and is contrary to Rule 3(a)(5)'s legislative history.

---

* To the extent that the penalties for DWI were amended after the 1988 amendment to Rule 3, so that DWI is, in some circumstances, a felony, see 23 V.S.A. § 1210(b)-(f), the Reporter's Notes are outdated because Rule 3 has always allowed an officer to arrest a person if there is probable cause to believe the person has committed a felony, even if the offense was committed outside the officer's presence. See V.R.Cr.P. 3(a)(1).

██ The rule allows officers to obtain vanishing nontestimonial evidence of a suspect's blood-alcohol content through the taking of a blood or breath sample. As part of the necessary procedure to obtain the sample, the defendant must be apprised of the various rights connected to the taking of the sample, and the authority to do so is clearly implied under the plain meaning of Rule 3(a)(5). Interrogation, however, is not a part of that necessary procedure, and its inclusion is not essential to avoid an absurd consequence. Although it is true that the test alone has limited value, a defendant's testimonial evidence can be obtained prior to arrest, as it was here, or at another time. Thus, the plain meaning of the rule does not, as the State claims, lead to the absurd result that an officer is authorized to obtain a sample that has no value. The exception was an expansion, albeit a limited one, of arrest authority and was designed to strike a new balance between the right of an individual to be free from arbitrary arrest for minor offenses and the right of the public to be protected.

That the Legislature was striving for such a limited expansion of arrest authority is evident in Rule 3(a)(5)'s legislative history. Rule 3(a)(5) was part of House Bill 62, an act relating to arrests for misdemeanors. At the time the bill was introduced, our rules allowed an officer to arrest a person without a warrant if (1) the person committed a felony or misdemeanor in the officer's presence; (2) the officer had probable cause to believe the person had committed a felony, even if the officer was not present when the offense was committed; or (3) a person committed a misdemeanor that involved either a violation of an abuse prevention order or an assault on a household or family member, even if the offense was not committed in the presence of the officer. V.R.Cr.P. 3(a)(1)-(2) (1986 Supp.). As originally introduced, H-62 would have authorized the warrantless arrest of "a person whom the officer ha[d] probable cause to believe ha[d] committed a crime punishable by imprisonment," even if the offense was not committed in the officer's presence. H-62, 1987 Sess. This would have eliminated the presence requirement for warrantless misdemeanor arrest and thereby the distinction between felonies and misdemeanors in the area of arrest authority.

The Senate would not support such a broad expansion of the arrest power and did not pass the bill during the first year of the biennial session. An Act Relating to Arrests for Misdemeanors: Hearings on H-62 Before the Senate Judiciary Committee, 1987 Adj. Sess. (Apr. 27, 1988) (statement of Committee Chair Mary Just Skinner). The focus of the Senate committee hearings in the adjourned session was

on rewriting H-62 to maintain the misdemeanor/felony distinction while creating several exceptions to the presence requirement.

The committee discussed whether any exception was needed for DWI not committed in an officer's presence. The Stowe Chief of Police explained that "the act of taking [the suspect] to the station to take [a] DWI test [is] an arrest." After hearing testimony from several witnesses, the DWI portion of the hearings concluded with the following exchange:

> Senator Chester Ketcham: Why can't we say, or can we say, that in a DWI situation, the officer has a right to restrain the person's liberty for the limited purpose of obtaining a test? . . . So what we're trying to do is to make it clear that the test that's taken can be taken back at the barracks and the person can be restrained for that purpose. . . . I see no problem in writing the law so that the officer has the right to restrain the person for the sole purpose of taking the test. . . . Otherwise [the suspect is] free to go.
>
> . . . .
>
> Senator Mary Just Skinner: So [then the arrest] would be for the sole reason of taking a test.
>
> Senator Chester Ketcham: Yes.

*Id.* The committee then assigned its legislative aide the task of drafting the exception. *Id.* This exchange unequivocally demonstrates that the legislative intent and the plain meaning of Rule 3(a)(5) are in harmony—an arrest for misdemeanor DWI not committed in the officer's presence can be for the purpose of obtaining a blood or breath sample only. Thus, we agree with defendant that the officers could not interrogate him, even after obtaining a *Miranda* waiver, upon the authority of the Rule 3(a)(5) arrest.

The State counters that because defendant was eventually cited for leaving the scene of an accident (LSA), he could have been arrested for that offense and then lawfully interrogated at the barracks regarding the DWI offense. Compare *Colorado v. Spring,* 479 U.S. 564, 575–77 (1987) (upholding the admissibility of defendant's statements about crime of murder where defendant was arrested for firearms violation and defendant was not told in advance of all possible subjects of questioning); *State v. Hollis,* 161 Vt. 87, 633 A.2d 1362 (1993) (holding that if defendant could have been lawfully arrested for one offense, but officer announced a different ground for arrest, which was later ruled invalid, evidence obtained as result of

arrest need not be suppressed as tainted fruit if articulated offense and offense for which there was probable cause are reasonably related). The State's argument is without merit because defendant could not have been arrested for LSA without a warrant.

Leaving the scene of an accident is a misdemeanor and, like DWI, a suspect can be arrested without a warrant for LSA not committed in an officer's presence under V.R.Cr.P. 3(a)(5). The arrest authority of Rule 3(a) as it relates to misdemeanors, however, is circumscribed by Rule 3(c)(1). Specifically, Rule 3(c)(1) directs in relevant part that:

> A law enforcement officer acting without warrant who is authorized to arrest a person for a misdemeanor under subdivision (a) of this rule shall, except as provided in paragraph (2) of this subdivision, issue a citation to appear before a judicial officer in lieu of arrest. In such circumstances, the law enforcement officer may stop and briefly detain such person for the purpose of determining whether any of the exceptions in paragraph (2) applies, and issuing a citation, but if no arrest is made, such detention shall not be deemed an arrest for any purpose.

The exceptions in paragraph (2) are: (A) the suspect's identity is not known or given; (B) "[a]rrest is necessary to obtain nontestimonial evidence upon the person or within the reach of the arrested person"; (C) arrest is necessary to prevent further harm or criminal conduct; (D) the suspect has no ties to the community or there is substantial likelihood the suspect will refuse to respond to the citation; (E) the suspect has a history of failure to appear; or (F) "[a] situation described in subdivision (a)(2) is present." V.R.Cr.P. 3(c)(2). Because the officers took nontestimonial evidence in the form of a breath sample, the issue is whether (B) applied.

■ To prove the offense of LSA, the State need only show that a person failed to stop after an accident or failed to give identification and other required information to the injured party or an enforcement officer. 23 V.S.A. § 1128(a). Evidence of defendant's blood-alcohol content was not relevant to the element of the offense. Because (c) is written to minimize when arrests are made for misdemeanors by making citation in lieu of arrest the norm and arrest the exception, we conclude that (B) did not apply. Consequently, defendant could not have been arrested for LSA, and the interrogation could not have been grounded on such an arrest.

■ Because the officers were without authority to interrogate defendant while he was under arrest, we agree that the statements

defendant made at the police barracks must be suppressed. Defendant urges that we go further and declare the arrest void ab initio and suppress the breath test, in addition to the statement. We do not agree that the unauthorized interrogation voided the arrest from its inception. Defendant cites no authority for his argument, and we do not find it persuasive. The interrogation was not authorized by Rule 3, and the remedy is suppression. *Laflin*, 160 Vt. at 201, 627 A.2d at 346. The arrest and breath sample were authorized by Rule 3(a)(5), and the breath test is admissible.

*The trial court's ruling denying suppression of testimonial evidence gathered through interrogation at the police barracks is reversed. The cause is remanded.*