## Robert Russell, et al. v. David and Betty Atkins

[679 A.2d 333]

No. 94-651

Present: Gibson, Dooley and Morse, JJ., and Martin, Supr. J., and Levitt, D.J., Specially Assigned

Opinion Filed April 12, 1996

*Stephen Norman*, Vermont Legal Aid, Inc., Burlington, for Plaintiffs-Appellants.

*Mark L. Sperry* and *Eric M. Knudsen* of *Langrock Sperry & Wool*, Burlington, and *Edwin L. Hobson* of *Linton & Hobson*, Williston, for Defendants-Appellees.

**Morse, J.** Plaintiffs appeal the superior court's grant of summary judgment to defendants David and Betty Atkins, owners of the Westbury Mobile Home Park, in a landlord/tenant dispute arising out of the proposed sale of the park. Plaintiffs make three claims on appeal. In claim I plaintiffs seek specific performance of an alleged contract to sell the park, claiming that the trial court erred in concluding that no contract existed. In claim II plaintiffs argue that defendants violated 10 V.S.A. § 6242(c)(2) by failing to negotiate in good faith, and committed unfair and deceptive business practices in violation of 9 V.S.A. § 2453(a) by threatening to evict tenants who did

not arrange for the purchase of their mobile home lots under a condominium conversion plan. Plaintiffs contend that the trial court erred in concluding that defendants' conduct did not constitute consumer fraud. In claim III plaintiff Russell, in a separate cause of action, argues that defendants committed an unfair business practice when they agreed to lease a lot to him only on the condition that he buy a mobile home from them. He contends that the trial court erred in dismissing his claim. We dismiss claim I, affirm claim II, and reverse the grant of summary judgment in claim III.

Plaintiffs are current or former tenants of the park, which contains 250 lots leased as sites for mobile homes. Park tenants own their mobile homes and lease only the sites on which the homes sit.

In January 1989, defendants gave notice of their intent to sell the park and their asking price as required by 10 V.S.A. § 6242(a) (Supp. 1989). Under § 6242(a)(3), as then enacted, an owner who received notice that a majority of adult residents were interested in buying the park, could "not make a final unconditional acceptance of an offer to purchase the park except one from a resident group representing a majority of the adult residents or from a nonprofit corporation approved by a majority of the adult residents." Section 6242(b)(1) obligated the owner to "negotiate in good faith with the resident group . . . or a nonprofit corporation . . . concerning the purchase of the park."

The tenants, acting through the Kellogg Woods Homeowners Association, gave notice of their interest in purchasing the park, and approved Housing Foundation Inc. (HFI) as their designee nonprofit corporation. HFI tendered a purchase and sale agreement for the full asking price of $5,000,000 and a $5000 deposit within the ninety-day period specified in § 6242(a)(3). The purchase and sale agreement included many terms not contained in the notice of intent to sell, including unusual financing contingencies. Defendants returned the contract and deposit promptly to HFI and notified the tenants that the park was no longer for sale.

In December 1989, defendants gave their tenants a prospectus called a "blue book," which described an offer to sell individual lots as condominiums for $33,000 each. Consistent with the Condominium Ownership Act, 27 V.S.A. §§ 1301-1339, the offer stated that the tenants could be evicted if they did not arrange for the purchase of their lots. *Id.* § 1333(a).

The "blue book" also contained an offer to sell the whole property to the tenants for $8,000,000 under 10 V.S.A. § 6242(a). Kellogg

Woods represented the tenants, who again elected to purchase the park and gave appropriate notice. During these negotiations, Kellogg Woods, HFI, and plaintiffs commenced this action in Chittenden Superior Court. Both Kellogg Woods and HFI settled and voluntarily dismissed their claims with prejudice. Only plaintiffs, acting as individuals, have pursued this action. No sales of the park or any condominium lots have taken place.

## I.

Plaintiffs first argue that defendants' initial notice of intent to sell was an offer, and that HFI's acceptance created an enforceable contract. They seek specific performance of the terms of the first notice, or a declaration that defendants abrogated their duty to negotiate in good faith under 10 V.S.A. § 6242(c)(2). We need not reach the merits of this issue because plaintiffs' claim is barred by res judicata.

"The doctrine of res judicata, also known as claim preclusion, bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the 'parties, subject matter and causes of action are identical or substantially identical.'" *Berlin Convalescent Center, Inc. v. Stoneman*, 159 Vt. 53, 56, 615 A.2d 141, 143 (1992) (quoting *Berisha v. Hardy*, 144 Vt. 136, 138, 474 A.2d 90, 91 (1984)). "It bars not only issues actually litigated but also those which 'should have been raised in previous litigation.'" *Id.* at 56, 615 A.2d at 143-44 (quoting *American Trucking Ass'ns v. Conway*, 152 Vt. 363, 370, 566 A.2d 1323, 1328 (1989)). Res judicata is intended to protect the courts and the parties from the burden of relitigation, *id.* at 57, 615 A.2d at 144, and a court may raise it on its own where the parties have failed to do so. *Merrilees v. Treasurer*, 159 Vt. 623, 623, 618 A.2d 1314, 1315 (1992) (mem.). All the elements of res judicata are present here.

Plaintiffs, along with a majority of the park's adult residents, acted through Kellogg Woods to nominate HFI as their agent for negotiating the purchase of the park. Under the statute, their only means of participating in the negotiations that form the basis of their claim was though HFI. See 10 V.S.A. § 6242(b)(1) (Supp. 1989) (park owner shall negotiate in good faith with resident group representing majority of adult residents or nonprofit corporation approved by majority of adult residents). After defendants returned HFI's purchase and sale agreement and deposit, HFI brought a claim against defendants in Chittenden Superior Court identical to the one plaintiffs now assert.

This claim was ultimately settled and voluntarily dismissed with prejudice.

As a general rule, settlement of a lawsuit by an agent binds the principal so long as the agent has authority to settle. See *New England Educational Training Serv., Inc. v. Silver Street Partnership*, 148 Vt. 99, 102, 528 A.2d 1117, 1119 (1987). The authority may be "'proven from the facts and circumstances attending the transaction in question.'" *Id.* at 103, 528 A.2d at 1119 (quoting *Stevens v. Frost*, 32 A.2d 164, 168 (Me. 1943)).

Here, both HFI and Kellogg Woods approved the settlement and dismissal. Plaintiffs never challenged HFI's or Kellogg Woods' authority to settle. Under these circumstances, plaintiffs are bound by the dismissal of the suit. *Littlefield v. Town of Colchester*, 150 Vt. 249, 251, 552 A.2d 785, 786 (1988) (dismissal with prejudice is treated as adjudication on merits).

## II.

Next, plaintiffs claim that defendants committed unfair and deceptive business practices in violation of 9 V.S.A. § 2453(a) by threatening to evict tenants who failed to arrange for the purchase of their lots. The "threat" arose in the context of a condominium conversion plan described in the aforementioned "blue book." The Condominium Ownership Act permits the eviction of tenants who fail to purchase their units after a statutorily prescribed period. 27 V.S.A. § 1333(a). The mobile home park statute, in contrast, states that "[a] mobile home resident may only be evicted for nonpayment of rent or for a substantial violation of the lease terms of the mobile home park, or if there is a change in use of the park land . . . or a termination of the mobile home park . . . ." 10 V.S.A. § 6237(a).

Because they proposed both a condominium conversion and a sale of the park, defendants included notice of their intention to sell the park pursuant to 10 V.S.A. § 6242(a), and "written notice to vacate or purchase" pursuant to 27 V.S.A. § 1333(a) in the "blue book." During the proceedings below plaintiffs, concerned about potential eviction, petitioned for, and were awarded, declaratory relief to the effect that mobile home residents are protected by the mobile home statute even where the park is undergoing a condominium conversion.

The court ultimately granted summary judgment to defendants on the consumer fraud claim concluding that, because plaintiffs did not

rely on the eviction notice to their detriment, they do not have an actionable claim under the Consumer Fraud Act, 9 V.S.A. §§ 2451-2480g. We agree. Under 9 V.S.A. § 2461(b), a cause of action is available only to consumers who contract for goods or services in reliance on, or sustain damages as a result of, false or misleading representations. There is no evidence here that plaintiffs either relied on or were damaged by any false or misleading representations. Far from relying on the alleged threat of eviction, plaintiffs petitioned for, and were awarded, declaratory relief.

Moreover, as the court stated, defendants acted reasonably in providing notice pursuant to both statutes. The condominium owner-ship statute compelled defendants to "give . . . tenant[s] . . . mini-mum written notice to vacate or purchase the[ir] unit[s]." 27 V.S.A. § 1333(a). Defendants were not authorized to decide on their own that this section did not apply to mobile home parks, and thus were not free to ignore the statutory mandate. Rather they were entitled to have a court determine which of the two statutes controlled the eviction issue without having their attempt to comply with both construed as consumer fraud. The award of summary judgment will not be disturbed.

## III.

Finally, plaintiff Russell separately claims that defendants violated the Consumer Fraud Act, 9 V.S.A. §§ 2451-2480g, by conditioning the lease of a mobile home site on the purchase of a mobile home from them. The trial court again granted summary judgment in favor of defendants, reasoning that such a "tying scheme" was permissible under the mobile home statute, and thus was not actionable as consumer fraud. In reaching its conclusion the court relied on the fact that pertinent language in the bill was *omitted* from the Mobile Home Parks Act, 10 V.S.A. §§ 6201-6265.

Legislative history reveals that, as originally introduced, the statute read: "Entrance shall not be denied or allowed on the basis of purchasing a mobile home from the park owner." 1973, H. 134, § 6254. The Legislature struck this language prior to enactment. See 10 V.S.A. §§ 6236-6240 (Cum. Supp. 1974) (language omitted). Though the statute is silent on the tying issue, neither expressly allowing nor forbidding it, the trial court reasoned that the Legislature omitted the tying language in order to permit the practice, and awarded summary judgment on the basis that "tying" was not prohibited under the Consumer Fraud Act.

■ The Consumer Fraud Statute, however, explicitly states that "in construing [the Act], the courts of this state will be guided by the construction of similar terms contained in section 5(a)(1) of the Federal Trade Commission Act as . . . amended by the Federal Trade Commission and the courts of the United States." 9 V.S.A. § 2453(b). Under § 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), which is identical to 9 V.S.A. § 2453, the FTC has declared that it is illegal to tie or condition the leasing of lots in mobile home parks to the purchase of homes from the park owner. *In re Mobile Homes-Mulitiplex Corp*, 94 F.T.C. 151, 156 (1979); *In re MacLeod Mobile Homes, Inc.*, 94 F.T.C. 144, 148 (1979). Thus, contrary to the trial court's interpretation of the Mobile Home Parks Act, plaintiff's claim was actionable.

■ Legislative intent is the polestar in interpreting the meaning of a statute. *State v. Forcier*, 162 Vt. 71, 74, 643 A.2d 1200, 1202 (1994). We will not presume that legislative silence bars an otherwise actionable claim. See *id.* at 75, 643 A.2d at 1202 (where meaning of statute is plain, statute must be enforced according to express terms). The Legislature's previous mandate that the statute should be construed consistently with the Federal Trade Commission Act may have been the reason that the tying provision was not expressly included, leaving the legality of "tying" to federal law.

■ The trial court also stated that plaintiff Russell had not shown "uncontested facts supporting all the elements of illegal tying." This is an improper basis for granting summary judgment. The nonmoving party is not required to show "uncontested facts" in order to survive a motion for summary judgment. Rather, summary judgment is appropriate only where, giving the nonmoving party the benefit of all reasonable doubts and inferences, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Baldwin v. Upper Valley Servs., Inc.*, 162 Vt. 51, 55, 644 A.2d 316, 318 (1994). If the facts supporting plaintiff's claim are contested, evidently genuine issues of material fact remain. Moreover, as noted above, we are not persuaded that defendants are entitled to judgment as a matter of law. Neither component of the two-part test for summary judgment is met here.

*Claim I is dismissed; claim II is affirmed; the award of summary judgment on claim III is reversed, and the cause is remanded.*