## State of Vermont v. Michael O'Neill

## State of Vermont v. Timothy Trono

[682 A.2d 943]

Nos. 95-217 & 95-239

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 14, 1996

Motion for Reargument in Docket No. 95-239 Denied July 3, 1996

*Jeffrey L. Amestoy*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Oreste V. Valsangiacomo, Jr.*, of *Valsangiacomo, Detora & McQuesten, P.C.*, Barre, for Defendant-Appellant O'Neill.

*David C. Sleigh* of *Sleigh & Williams*, St. Johnsbury, for Defendant-Appellant Trono.

**Morse, J.** These consolidated interlocutory appeals arise from the Washington District Court's denial of defendants' motions to dismiss

charges of obstruction of justice under 13 V.S.A. § 3015 ("[w]hoever
. . . corruptly . . . obstructs or impedes, or endeavors to obstruct or
impede the due administration of justice" commits a crime). Defend-
ants, relying on the interpretation of a federal statute similar to
Vermont's, claim that the existence of a pending judicial proceeding is
an element of the crime. The trial court ruled that a pending judicial
proceeding is not a required element under Vermont's statute. We
affirm.

## I.

These appeals arise out of the same incident. In early 1994, the
Vermont State Police began an investigation of alleged misconduct by
members of the Northfield Police Department. On Labor Day week-
end of 1993, Officer Ken Falcone had allegedly fired his pistol into a
store owned by William Oren, an outspoken critic of the department.

### Officer Trono

Defendant Timothy Trono, who knew that Falcone was responsible
for the shooting, responded with Officer Donald McCormick to Oren's
report of vandalism. McCormick recovered two shell casings at the
scene, which he gave to Trono. Trono, in turn, submitted two shell
casings to the Vermont State Police Crime Laboratory. He later told
Officer Mark Heimall that he had substituted a different pair of
casings for the ones found at the scene. Subsequently, laboratory
personnel discovered that although a bullet jacket recovered from the
scene matched a pistol taken from Falcone's home, the casings Trono
submitted did not, indicating that they were not the ones retrieved
from the scene.

Trono was charged with obstruction of justice. He filed a motion to
dismiss the charge on the ground that the statute does not apply to
conduct that takes place before a judicial proceeding is initiated. The
motion was denied. Subsequently Trono pled guilty to obstruction of
justice, but retained the right to appeal the denial of his motion to
dismiss.

### Police Chief O'Neill

During the course of the misconduct investigation, Officer Mark
Heimall spoke with the chief of the Northfield Police, defendant
Michael O'Neill, while wearing an electronic listening device. Heimall
told O'Neill that he knew Falcone and Trono were involved in the

shooting of Oren's store and asked what he should say if questioned about it. O'Neill replied, "The way I would approach it at this point in time is I don't know anything about it."

Heimall also spoke with Falcone. Falcone told him: "[T]hey need the barrel [the casings at the scene] w[ere] fired from. . . . Mike [O'Neill] told me to dump, like go to Jersey and toss [my gun barrel] in some river somewhere on my way to Jersey." Falcone also told the Vermont State Police that O'Neill, several times, had told him to get rid of his gun barrel. O'Neill also supplied Trono with a gun, directing him to fire it, collect two casings, and substitute them for the ones recovered from Oren's store. O'Neill was charged with three counts of obstruction of justice. He moved for their dismissal on the same ground — that no judicial proceedings were pending at the time the alleged offenses occurred. The court denied the motion, and O'Neill filed an interlocutory appeal which was consolidated with Trono's appeal.

## II.

The sole issue on appeal is whether the existence of a pending judicial proceeding is an element of the crime of obstruction of justice. The statute, 13 V.S.A. § 3015, reads as follows:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, intimidates or impedes any witness, grand or petit juror, or officer in or of any court of the state of Vermont, or causes bodily injury to such person or intentionally damages the property of such person on account of such person's attendance at, deliberation at, or performance of his or her official duties in connection with a matter already heard, presently being heard, or to be heard before any court of the state of Vermont, or corruptly or by threats or force or by any threatening letter or communication, obstructs or impedes, or endeavors to obstruct or impede the due administration of justice, shall be imprisoned not more than five years or fined not more than $5,000.00, or both.

Defendants were charged, under the last or so-called "omnibus clause" of the provision, with corruptly endeavoring to obstruct or impede the due administration of justice. The Vermont statute, which was adopted in 1978, is based on a federal statute, 18 U.S.C. § 1503 (1976), which read as follows:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, magistrate, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years or both.

See also *State v. McHugh*, 161 Vt. 574, 576, 635 A.2d 1200, 1202 (1993) (mem.) (omnibus obstruction of justice provision in federal statute closely parallels Vermont's). The federal statute was in turn derived from an earlier federal statute dating back to the nineteenth century:

> Every person who corruptly, or by threats or force, endeavors to influence, intimidate, or impede any witness, or officer in any court of the United States, in the discharge of his duty, or corruptly, or by threats or force, obstructs or impedes, or endeavors to obstruct or impede, the due administration of justice therein, shall be punished by a fine of not more than five hundred dollars, or by imprisonment not more than three months, or both.

Revised Stat. § 5399 (1878) (repealed 1909) (codifying Act of March 2, 1831 ("An Act declaratory of the law concerning contempts of court")). In its original version the statute prohibited attempts to influence or intimidate witnesses and court officers "in any court of the United

States . . . or to obstruct or impede the due administration of justice *therein." Id.* (emphasis added).

In 1893 the United States Supreme Court interpreted § 5399 by holding that there could be no violation of it without:

> knowledge or notice or information of the pendency of proceedings in the United States court, or the progress of the administration of justice *therein.*
>
> . . .
>
> The obstruction of the due administration of justice in any court of the United States . . . is indeed made criminal, but such obstruction can only arise when justice is being administered.

*Pettibone v. United States*, 148 U.S. 197, 205, 207 (1893) (emphasis added). This interpretation was arguably reasonable in light of the express language of the statute, which referred only to the obstruction of the due administration of justice within the courts of the United States.

In the face of numerous amendments to the federal statute, however, including the deletion from the omnibus clause of any reference to courts or court proceedings, see 18 U.S.C. § 1503 (1948) (word "therein" struck from omnibus clause; no direct reference to court or court proceedings remains in clause), a majority of federal courts have persisted in holding that a violation cannot occur absent a pending judicial proceeding. See 2 E. Devitt, et al., Federal Jury Practice and Instructions § 41.03, at 541-51 (4th ed. 1990) (discussing cases); Annotation, *Construction and Application of 18 U.S.C.S. § 1503*, 20 A.L.R. Fed. 731, 757-61 (1974) (same).

Only one court, the United States District Court for the Western District of Pennsylvania, has directly addressed the question of whether the removal of the word "therein" was intended to broaden the scope of the omnibus clause so that it would apply before a judicial proceeding is initiated. The court concluded, without analysis, that the phrase "due administration of justice" "is qualified and limited by the enumeration of specific judicial functions concerned with the 'administration' of justice," and that an investigating body, as opposed to a judicial arm of government, does not administer justice within the meaning of the statute. *United States v. Scoratow*, 137 F. Supp. 620, 621-22 (W.D. Pa. 1956). The *Scoratow* court did not address why the word "therein" was included in the provision in the first place or why justice can be administered only in court proceedings. Moreover, the

court failed to explain why conduct that obstructs justice can occur only while a proceeding is pending; common sense dictates that present conduct can obstruct the administration of justice in future proceedings. See D. Oesterle, *A Private Litigant's Remedies for an Opponent's Inappropriate Destruction of Relevant Documents*, 61 Tex. L. Rev. 1185, 1194 n.29 (1983) (pending judicial proceeding requirement not obvious from language of § 1503 or any of its forerunners, but is derived from ill-advised general language of *Pettibone*).

■ Defendants' entire argument is premised on one rule of statutory construction — where Vermont adopts a statute from another jurisdiction, the presumption is that the Legislature also adopted the construction given the statute in its jurisdiction of origin. *Hartnett v. Union Mut. Fire Ins. Co.*, 153 Vt. 152, 154, 569 A.2d 486, 487 (1989). They argue that we must adopt the construction given to the federal statute by the federal courts whether, in our view, the interpretation is sound or not.

There are many rules of construction, however, the paramount one being to discern and give effect to the intent of the Legislature. *Swett v. Haig's, Inc.*, 164 Vt. 1, 5, 663 A.2d 930, 932 (1995). A competing rule, like the one defendants cite, cannot overcome the will of the Legislature. Like all rules of construction, it is an aid to be relied upon where appropriate, but not where it leads to a result inconsistent with legislative intent. See *State v. Fuller*, 163 Vt. 523, 527, 660 A.2d 302, 305 (1995) (statutory construction technique not rule of law, but aid to be relied on where appropriate); *State v. Papazoni*, 159 Vt. 578, 580 n.1, 622 A.2d 501, 503 n.1 (1993) (rules of statutory construction no more than aid in determining legislative intent).

■ The first step in discerning legislative intent is to look at the language of the statute itself. We presume the Legislature intended the plain, ordinary meaning of the language. *Swett*, 164 Vt. at 5, 663 A.2d at 932. It is inappropriate to read into a statute something which is not there unless it is *necessary* in order to make the statute effective. *Fuller*, 163 Vt. at 528, 660 A.2d at 305. Here, the statute forbids "corrupt" conduct that has the tendency to "obstruct or impede the due administration of justice." 13 V.S.A. § 3015. Defendants' conduct, which included advocating the making of false statements and destroying material evidence, falls within this language. The provision makes no reference to a "pending proceeding" requirement, and such a requirement is not necessary to reasonably limit the

law to a proper scope. On the contrary, as the instant case illustrates, such a requirement would make the statute wholly ineffective where judicial proceedings have not been initiated. It would be counterintuitive for a legislator to divine that the express language did not cover what it purports to cover. Under a plain meaning approach, there is no evidence that the Legislature intended the provision to apply only where a judicial proceeding was pending. See *State v. Forcier*, 162 Vt. 71, 75, 643 A.2d 1200, 1202 (1994) (where meaning of statute plain on its face, statute must be enforced according to express terms).

Furthermore, the statute as adopted is not identical to its federal counterpart. To begin with, the titles of the two provisions differ substantially. The version of the federal provision in effect when the Vermont statue was adopted was titled: "Influencing or injuring officer, juror, or witness generally." 18 U.S.C. § 1503 (1976) (amended 1982 & 1994). The Vermont statute, in contrast, is entitled "Obstruction of justice." This difference is evidence that the Vermont statute was intended to apply to a broader range of conduct than the federal statute. See *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 136, 636 A.2d 744, 749 (1993) (in construing statute we look to every part, and to reason and spirit of law).

The Vermont statute also differs from the federal one in that it reaches conduct that obstructs the administration of justice in matters "already heard, presently being heard, or *to be heard* before any court of the state." 13 V.S.A. § 3015 (emphasis added). The federal statute refers only to present and past proceedings, not to matters "to be heard." See 18 U.S.C.A. § 1503 (West Supp. 1996) ("[w]hoever corruptly . . . injures any . . . juror . . . on account of . . . his *being* or *having been* such juror") (emphasis added). This departure from the federal language further indicates that the Legislature intended the Vermont statute to apply more broadly than the federal statute. See *State v. Greenwald*, 454 A.2d 827, 830 (Me. 1982) ("It can be assumed that changes made in a statute which was drawn from a similar statute in another jurisdiction must have been for the very purpose of avoiding the construction developed elsewhere."); *Payea v. Howard Bank*, 164 Vt. 106, 107, 663 A.2d 937, 938 (1995) (when construing statute, we presume language inserted advisedly).

Defendants claim that the above alteration in the main clause should not affect the interpretation of the omnibus clause, which remains identical to that in the federal provision. We disagree. As

written, the omnibus clause is the broader of the two. See *United States v. Brand*, 775 F.2d 1460, 1464-65 (11th Cir. 1985) (§ 1503 has specific clause covering jurors and court officials, and omnibus clause "broad enough to cover any act committed corruptly, in an endeavor to impede or obstruct justice"). It does not make sense for the main clause, which refers to jurors and court officers, to apply where no judicial proceeding is pending, while application of the omnibus clause is restricted to circumstances where a proceeding is pending.

Finally, the Vermont statute differs substantially from the federal scheme. Under the federal scheme, different types of criminal behavior are targeted specifically in different statutes, see, e.g., 18 U.S.C.A. § 1510 (West Supp. 1996) (obstruction of criminal investigations); *id.* § 1512 (tampering with a witness), whereas the Vermont scheme consists of one broadly written statutory section intended to cover all of the above. Essentially, defendants assert that the Legislature intended the destruction of material evidence by police to be lawful unless a judicial proceeding is pending. To accept defendants' argument, we would have to assume that by changing the language and title of the provision, the Legislature did not intend to create a broad obstruction of justice statute, but instead intended to decriminalize behavior that is illegal under the federal scheme. See 18 U.S.C. § 1510 (West Supp. 1996) (obstruction of criminal investigations). We find this proposition implausible. See *Forcier*, 162 Vt. at 75, 643 A.2d at 1202 (interpretations should avoid unjust and unreasonable consequences).

*Affirmed.*