## State of Vermont v. Edwin J. Massey

[730 A.2d 623]

No. 97-541

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed April 16, 1999

*Dan M. Davis*, Windham County State's Attorney, and *James E. Maxwell*, Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*David A. Gibson*, Brattleboro, for Defendant-Appellant.

**Morse, J.** Defendant, Edwin James Massey, appeals his conviction for violating 23 V.S.A. § 1201(a) operating a motor vehicle on a public highway while under the influence of intoxicating liquor. Defendant contends that the trial court erred by: (1) failing to suppress statements he made while in custody for processing; (2) failing to declare a mistrial or provide a limiting instruction to the jury after defendant testified about the results of a roadside breath test (alcosensor); (3) admitting the results of a DataMaster breath test; and (4) limiting the jury's consideration of the issue raised by defendant that the police prevented or denied him from obtaining an independent blood test. We affirm.

In the town of Rockingham at approximately 1:00 p.m. on the afternoon of November 13, 1996, defendant drove his truck off of the road and into a telephone pole. The weather was clear and the road conditions were good. The impact severed the pole and brought power lines down across the road. Two law enforcement officers from the Vermont State Police arrived at the scene shortly after the accident.

The first officer smelled alcohol on defendant's breath, observed defendant's slow, deliberate movements, bloodshot eyes, and noticeable confusion when walking near the downed power lines. There was no apparent reason for the accident other than driver impairment, although defendant claimed that he lost control of his truck while lighting a cigarette. The officer administered a roadside alcosensor breath test, the results of which fortified his belief that defendant was under the influence of alcohol. In accordance with V.R.Cr.P. 3(a)(5) (Cum. Supp. 1998), the first officer took defendant into custody and transported him to the police barracks for an infrared breath test (DataMaster).

On the way to the police barracks, defendant made a number of unsolicited statements to the police that were admitted into evidence at trial. The officer testified that he did not believe defendant was sincere when he stated, "You guys are great. You guys are special," and then told the officer that he couldn't do their job because he would be tougher than they were being with him.

At the barracks, defendant telephoned an attorney and agreed to take the DataMaster test. After the test was administered but before the results were obtained, defendant exclaimed "I didn't have a drink today. I told you that before." Then he said "I want a blood test. I'm not answering any questions." The test results indicated a blood alcohol content (BAC) of .195 percent. During the course of processing, the officer provided defendant with information regarding an independent test: "Since you are being released, if you wish additional tests to be paid for at your own expense, you will have to make your own arrangements. Do you intend to obtain additional tests?" In response to defendant's affirmative answer, the officer gave him a blood test kit and a list of facilities where he could go to obtain the independent test. Defendant was then permitted to make phone calls to secure a ride from the barracks. Defendant was unable to arrange a ride. At approximately 3:45 p.m., roughly an hour after the processing concluded, the second officer offered defendant a ride home, and he accepted. The second officer testified at trial that he and defendant had a lengthy conversation in the police cruiser and that defendant never indicated that he wanted to be taken to a facility for a blood test.

At trial, defendant argued that the DataMaster results were flawed. He first claimed that he had been cleaning his house with ammonia and bleach earlier that day and that the resulting lung irritation may have led to the positive test. Defendant then questioned the procedures the officer followed in administering the test, including whether he had followed procedures recommended by the Vermont Criminal Justice Training Council (the Council) in its officer training manual. The procedures for administering the DataMaster test that appear on the driving under the influence (DUI) processing form mirror the guidelines promulgated by the Council in the manual. The manual states that officers should observe subjects for fifteen minutes prior to the test and recommends that the officer check the subject's mouth for foreign objects. The manual also states that officers should avoid handling the mouthpiece on the DataMaster and that the machine should be located on a flat, sturdy surface.

Defendant maintained that the officer failed to observe him for fifteen minutes prior to the test and failed to mark the appropriate box on the processing form noting the observation period. Defendant also claimed that the officer did not check his mouth before the test. Defendant highlighted the lack of evidence that the DataMaster machine was located in a place at the Rockingham barracks that followed the Council recommendations and similar lack of evidence that the officer handled the mouthpiece properly. Additionally, defendant pointed out that while the officer was certified to administer the DataMaster in 1989, he had neither performed the test on a suspect, nor received any recertification training since then. Defendant asserted further that the officers failed to transport him to a facility to get an independent test.

Over defense objection, the court admitted the results of the DataMaster. The court rejected defendant's arguments that the Council training procedures govern admissibility and that the test should have been suppressed because the officers effectively prevented him from obtaining an independent test. Defendant also objected to the admission of the statements that he made to the officer while en route to the police barracks. Defendant moved for a mistrial, and in the alternative, for a limiting instruction, when he testified about the alcosensor test result and the State referenced it during closing argument. The court denied defendant's motions, and the jury returned a guilty verdict.

## I.

Defendant contends that the trial court committed error by admitting the statements he made following his arrest and during the time he was in custody for processing. Defendant claims that these statements could not be used against him since the officer had not provided Miranda warnings or any notice that what he said could be admitted in court. Defendant argues that, where police do not interrogate a suspect but hold him in custody to obtain an evidentiary breath sample, simple fairness requires that he be informed that anything he utters may be used at trial.

Defendant argues that our holding in *State v. Forcier*, 162 Vt. 71, 643 A.2d 1200 (1994), should be extended to require officers, acting under the version of V.R.Cr.P. 3(a)(5) in effect in 1996, to inform suspects that anything they freely volunteer may be used against them in court. In *Forcier*, we held that statements made after a Miranda waiver during interrogation while defendant was in custody

under V.R.Cr.P. 3(a)(5) (Cum. Supp. 1996) for the "limited purpose of obtaining a sample of breath or blood" were inadmissible. *Forcier*, 162 Vt. at 74, 643 A.2d at 1201 (quoting V.R.Cr.P. 3(a)(5), which has since been amended by the legislature and no longer contains this language; see 1997, No. 117 (Adj. Sess.), § 30). There, defendant, after waiving his Miranda warnings, responded to police interrogation while at the barracks. The interrogation yielded "substantial incriminating evidence" against the defendant. *Id.* at 73, 643 A.2d at 1201. We held that the officers in *Forcier*, even after obtaining a Miranda waiver, were not authorized under V.R.Cr.P. 3(a)(5) to interrogate defendant, and the statements made in response should have been suppressed by the trial court. See *id.* at 77, 79, 643 A.2d at 1203.

■ We decline defendant's invitation to extend the holding in *Forcier*. In that case, we were merely giving effect to the intent as demonstrated by the plain meaning of the rule. Besides, defendant's statements such as "you guys are great, you guys are special" did not contain an admission that he was intoxicated, but were verbal acts prejudicial to him as behavior tending to show that he was intoxicated. The statements evidenced defendant's bravado and lack of inhibition. Therefore, the statements had independent legal significance and were admissible. See *United States v. Trapnell*, 495 F.2d 22, 24 (2d Cir. 1974) (statements made to psychiatrist tending to show that defendant acted rationally were verbal acts not protected by Fifth Amendment).

## II.

Defendant maintains that 23 V.S.A. § 1203(f) (Cum. Supp. 1998) bars the admission of the alcosensor test result. He further contends that his own testimony recounting the officer's statement concerning the alcosensor result was inadmissible hearsay. See V.R.E. 801(c). Defendant testified on direct examination:

> [The officer] wanted to go ahead and have me blow into one of these portable machines, like to see if you're intoxicated. I said "okay" and he asked me if I'd mind, and I said, "No, I don't mind." I blew into it and he holds it like this. . . he says, "It's point two zero four (.204)." I said, "Damn it all, I want another test. This is impossible. I never had a drink this morning. And that's the truth."

The State referenced this testimony in a question to its expert witness:

We're now at about . . . 1:30, as Mr. Massey has testified, he is given the pre-arrest Alcosensor, and he's described to us what that is that [the officer] used, held up and said it's a point two zero four (.204) or whatever Mr. Massey testified to.

An hour later he's given the DataMaster with a point one nine five (.195) . . . I just have to ask you straight out, what are the effects of the bleach and the ammonia on . . . the DataMaster machine?

The State also made reference to the alcosensor in closing argument:

The defendant himself testified a result of two zero four (.204) on that screening device . . . somewhat surprising and unique that one reaches a point where the argument is, hey, that's so high it couldn't possibly have been . . . one nine five (.195), ridiculous. There must be something wrong here. Well, there is something wrong here. Too much alcohol.

Title 23 V.S.A. § 1203(f) (Cum. Supp. 1998) provides: "The results of [a] preliminary screening test may be used for the purpose of deciding whether an arrest should be made and whether to request an evidentiary test and shall not be used in any court proceeding except on those issues."

We have addressed claims of error based on evidence introduced by the aggrieved party and held that the party must "assume the responsibility for whatever prejudice to his case derived from this evidence." *Rash v. Waterhouse*, 124 Vt. 476, 477, 207 A.2d 130, 132 (1965). Our reasoning in the civil context rested on sound policy:

A party who allowed inadmissible evidence to come in without objection could gain an unconscionable advantage. He would, in effect, have a built-in "veto" over the litigation if it took a course unfavorable to him, for he could then bring forth his unmentioned assignments of error and require a new trial.

*Id.* at 478, 207 A.2d at 132.

We have recognized that this principle holds true in both civil and criminal cases. See *State v. Berard*, 132 Vt. 138, 145, 315 A.2d 501, 506-07 (1974) (quoting *Rash* and noting that defendants must assume responsibility for whatever prejudice derived from evidence introduced without challenge); see also *State v. Crabtree*, 482 S.E.2d 605,

612 (W. Va. 1996) (invited error doctrine prevents party from inducing erroneous response and then seeking to profit from that error). Defendant testified to the results of the alcosensor on direct examination. The court properly denied defendant's motion for a mistrial.

Defendant argued in the alternative that the court should have provided a limiting instruction so that the jury would not rely on the alcosensor result as further proof of intoxication. The court refused and ruled that the evidence introduced by defendant was before the jury for any relevant purpose.

■ Even if it were preferable that the court give a limiting instruction, it would not warrant reversal. The alcosensor test was not critically important to the prosecution. In fact, it was cumulative and unnecessary to the State's case in light of the DataMaster test that was properly before the jury and the testimony of the police at the scene. There was an abundance of evidence for the jury to find guilt beyond a reasonable doubt notwithstanding the objectionable test result.

### III.

Defendant also claims that the court erred in admitting the results of the DataMaster test. He contends that the officer failed to follow the procedures recommended by the Council in its officer training manual.

Two alternatives exist for admitting the results of a DataMaster breath test in criminal or civil suspension cases. The proponent may take advantage of a statutory presumption of validity and admissibility, as long as the test was performed by an instrument that met the Department of Health performance standards. See 23 V.S.A. §§ 1203(d) (criminal), 1205(h)(4) (civil suspension) (Cum. Supp. 1998). Alternatively, the proponent may admit the test results by laying a foundation through expert testimony. See State v. Rolfe, 166 Vt. 1, 3, 686 A.2d 949, 952 (1996); see also State v. McGovern, 164 Vt. 67, 69, 664 A.2d 275, 276 (1995) (without statutory basis for excluding breath test, rules of evidence determine whether results are admissible). In either case, the court determines under V.R.E. 104(a) whether the foundational requirements are sufficient to warrant admissibility of the test results.

■■ Once the foundation facts for admissibility are established, the defendant may question the validity of the test result, but it is for the jury to decide the weight to give the test. Cf. State v. Guidera, 167

Vt. 598, 600, 707 A.2d 704, 705 (1998) (mem.) (stressing *Rolfe*'s holding that foundation for admissibility focuses on performance of the instrument). The senior chemist for the Department of Health testified for the State that the DataMaster used at the Rockingham police barracks complied with the Department of Health performance standards. Defendant did not refute these foundation facts, and there was no error in admitting the results of the DataMaster through the statutory presumption in § 1203(d).

Defendant's reliance on the Council recommendations is misplaced. The step-by-step procedures in the Council student training manual that are outlined on the DUI processing form do not affect the foundational requirements for admissibility. Defendant concedes that the officer was certified to administer the test. Defendant presented evidence that questioned the procedures, but did not introduce any evidence refuting the reliability of the instrument itself. Without evidence attacking the DataMaster's reliability, defendant's arguments go only to the weight that the jury could give to the test results and not to admissibility. See *State v. Rolfe*, 166 Vt. at 13, 686 A.2d at 957 (defendant free to offer evidence to contest foundational facts or to urge jury to give test results no weight).

## IV.

Defendant finally claims that the DataMaster test was inadmissible because the law enforcement officers unreasonably interfered with his desire to obtain an independent test, and the jury should have been permitted to reject the test results for that reason. At issue are two subsections of 23 V.S.A. § 1203a that govern independent chemical tests. First, § 1203a(a) addresses admissibility: "The failure or inability to obtain an additional test or tests by a person shall not preclude the admission in evidence of the test taken at the direction of an enforcement officer *unless the additional test was prevented or denied by the enforcement officer.*" (Emphasis added.) Second, § 1203a(c) speaks to transportation: "If after reasonable efforts the person is unable to arrange transportation necessary to obtain the blood test upon completion of processing, the law enforcement officer shall provide or arrange transportation to a facility available to administer the test unless, for good cause, the officer is unable to so."

At trial, the officers and defendant took the stand and testified to the events surrounding his arrest and processing. Conflicting testimony regarding defendant's efforts to secure his own transportation home or to an independent facility was put before the jury. The court

found that there was no evidence that the officers had prevented or denied defendant from obtaining an independent test and ruled the test result admissible in evidence under 23 V.S.A. § 1203a(a). The State sought a limiting instruction on the transportation testimony that had already been introduced and later withdrew its request for fear of "step[ping] further into the mud by making an instruction out of it." The court ultimately instructed the jury to consider the transportation testimony as bearing only on the witness' credibility because it considered the issue of "whether or not the officer acted in a proper or improper manner" as strictly a legal matter regarding admissibility.

▮ Defendant first argues that the court erred in admitting the test result because the evidence established that he was denied the opportunity to obtain an independent blood test when the processing officers refused to give him transportation to a health facility for that purpose. Questions of admissibility of evidence are for the court, see V.R.E. 104, and involve the discretion of the trial judge. See *State v. Fuller*, 168 Vt. 396, 404, 721 A.2d 475, 481 (1998). Based on the conflicting evidence, the trial court ruled that the officers neither prevented defendant from obtaining an independent blood sample nor denied him the opportunity to do so. See 23 V.S.A. § 1203a(a). We find no abuse of discretion in that ruling.

Defendant next argues that he was prevented from arguing to the jury that the failure of the officers to provide or arrange transportation to a facility for an independent blood test, as required by 23 V.S.A. § 1203a(c), allowed them to refuse to accept the breath test. See *State v. West*, 151 Vt. 140, 143, 557 A.2d 873, 875 (1988) (jury may consider whether test was properly administered in deciding whether to convict based on test result). In assessing this claim, we note that defendant was allowed to introduce before the jury evidence related to his claim that the officer failed to arrange or provide transportation. The issue relates to the court's instruction to the jury on how to consider the transportation evidence.

▮ The court instructed the jury that they could consider the independent test evidence only as part of its evaluation of the credibility of the witnesses. During the charge conference, defense counsel objected, arguing that the court should instruct that the evidence about the failure to transport defendant to a facility for a blood test did not make the test inadmissible, but that the jury would be entitled to consider the test "if it found . . . the chemical analysis

was worthy of being considered in accordance with the other protections." After the instruction, defense counsel "reiterate[d]" his exception stating "the instruction should have merely related that to not affecting admissibility." Defendant's cryptic objection was inadequate to comply with V.R.Cr.P. 30 (defendant must object to instruction, "stating distinctly the matter to which he objects and the grounds of his objection"). At best, defendant was seeking an instruction that the judge had made an admissibility ruling only and had not taken away the function of the jury to find the test result reliable in order to convict. We fail to see how defendant's added or different approach would have aided the jury which knew little about the admissibility dispute. In any event, defendant proposed no alternative instruction that would have made his position clear to the court and the jury. See *State v. Crosby*, 124 Vt. 294, 297, 204 A.2d 123, 125-26 (1964) (finding no error where defendant's nebulous objection to instruction did not reasonably indicate with specificity what he was requesting).

*Affirmed.*