**VERMONT MOBILE HOME OWNERS' ASSOCIATION, INC., Louise Beaudoin, Ronald D. Blow, Martha Bohannon, Charlton Brobyn, Francis Butler, Paula Dashno, Nancy Devarney, Walter Erno, Margaret Erno, John Hutman, Ruth Hutman, Rick Kelley, Brenda Kelley, Stanley Kubas, Roger Ladieu, Connie Ladieu, Deborah Lawrence, Cleon J. Ledoux, Patricia Ledoux, Emile Limoge, Jr., Kevin Machia, Melissa Machia, Judy**

554

Matot, Mike McGovern, Melanie Mc-Govern, Maurice Meunier, Armande Meunier, George Muehl, Sherry Muehl, Kevin Nolan, Howard Parish, Joan Parish, Tamara Richard, Scott Richard, Donald Ritchie, Kelley Ritchie, Roseline Rushlow, Arthur Rushlow, Scott Stevens, Annette Stevens, Kevin Young, Pamela Young, Kerry Newton, Raymond Limoges, Lucille Limoges, Patrick Allain, Paul Cota, Marilyn Demar, Susan Kennett, and Mark Mercure, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Nicole LAPIERRE, Andre Lapierre, Lapierre Enterprises, Inc., and Peoples Trust Co. of St. Albans, Defendants.

No. 2:97–CV–209.

United States District Court,
D. Vermont.

Feb. 1, 2001.

Stephen S. Norman, Vermont Legal Aid, Inc., Burlington, VT, Peter Francis Welch, Welch, Graham & Manby, White River Jct, VT, John Davis Shullenberger, Jericho, VT, for VT Mobile Home Owners' Association, Inc., Louise Beaudoin, Stanley Kubas, Maurice Meunier, Armande Meunier, Scott Stevens, Annette Stevens, Charlton Brobyn, Ronald D. Blow, Francis Butler, Paula Dashnow, Nancy Devarney, Walter Erno, Margaret Erno, John Hutman, Ruth Hutman, Rick Kelley, Brenda Kelley, Deborah Lawrence, Emile Limoge, Jr., Judy Matot, Mike McGovern, Melanie McGovern, George Muehl, Sherry Muehl, Kevin Nolan, Howard Parish, Joan Parish, Tamara Richard, Scott Richard, Donald Ritchie, Kelley Ritchie, Roseline Rushlow, Rushlow, Kerry Newton, Raymond Limoges, Lucille Limoges, Patrick Allain, Paul Cota, Marilyn Demar, Susan Kennett, Martha Bohannon, Roger Ladieu, Connie Ladieu, Cleon J. Ledoux, Patricia Ledoux, Kevin Macia, Melissa Macia, Kevin Young, Pamela Young.

Mark A. Schneider, Plattsburgh, NY, for Mark Mercure.

Robert B. Hemley, Gravel and Shea, Burlington, VT, Edwin L Hobson, Jr, Burlington, VT, for Nicole Lapierre, Andre Lapierre, Lapierre Enterprises, Inc., Peoples Trust Company of St. Albans.

### RULING ON MOTION FOR JUDGMENT AS A MATTER OF LAW

SESSIONS, District Judge.

The remaining defendants in this case, Nicole Lapierre, Andre Lapierre and Lapierre Enterprises ("the Lapierres") have moved for judgment as a matter of law on the federal antitrust and state consumer fraud and mobile home claims, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. For the reasons that follow, the Lapierres' motion is granted, and the suit is dismissed.

Rule 50(a) provides that a motion for judgment as a matter of law may be granted if "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R.Civ.P. 50(a)(1). A court may grant judgment as a matter of law when the evidence, viewed in the light most favorable to the nonmoving parties, with every reasonable inference drawn in their favor, and without regard to its weight, yields but one conclusion as to the verdict that reasonable jurors can reach. *Merrill Lynch Interfunding, Inc. v. Argenti,* 155 F.3d 113, 120–121 (2d Cir.1998).

In this case the Lapierres claim that the Plaintiffs have provided insufficient evidence that they have engaged in illegal

tying, or that they have charged an illegal entrance fee. The Court finds that Plaintiffs have not introduced evidence from which reasonable jurors could conclude that the Lapierres enjoyed market power, that there were anticompetitive effects in the market for mobile homes, that the Plaintiffs suffered antitrust injury, or that they sustained damages. Consequently the antitrust claim must be dismissed. The Court further finds that Plaintiffs' evidence that they were charged an illegal entrance fee is legally insufficient as well.

*Antitrust Claim*

■ A tying arrangement is "an agreement by a party to sell one product but only on the condition that the buyer also purchase [ ] a different (or tied) product." *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 56 (2d Cir.1980). "[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). In the Second Circuit, proof of five elements are required for a claim of illegal tying:

> first, a tying and a tied product; second, evidence of actual coercion by the seller that forced the buyer to accept the tied product; third, sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product; fourth, anticompetitive effects in the tied market; and fifth, the involvement of a "not insubstantial" amount of interstate commerce in the "tied" market.

*Hack v. President and Fellows of Yale Coll.*, 237 F.3d 81, 85–86 (2d Cir.2000), *quoting DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir.1996).

■ Plaintiffs have presented evidence that the Lapierres had an arrangement whereby they leased mobile home lots (the "tying" product) only on the condition that the tenant purchase his or her mobile home (the "tied" product) from the Lapierres or one of their designated dealers. They have presented evidence that the two products are distinct, rather than parts of a single product. Plaintiffs have also presented evidence from which reasonable minds could conclude that there was actual coercion, that buyers were required to purchase their mobile homes from certain dealers or from the Lapierres themselves when they might have preferred to purchase their mobile homes elsewhere. *See Capital Temporaries v. Olsten Corp.*, 506 F.2d 658, 666 (2d Cir.1974).[1]

Although the first two elements of an illegal tying claim survive the Lapierres' pre-verdict motion for judgment as a matter of law, the third element, economic power in the tying product market, does not. The Plaintiffs contend that the Lapierres enjoy market power, an advantage over their competitors that has enabled them to require a buyer to do something that the buyer would not do in a competitive market. They have presented some evidence of uniqueness with regard to the Lapierres' mobile home lots. "[U]niqueness of a product can trigger a tying arrangement claim." *Hack v. Yale, id.* "Where uniqueness is alleged, questions of market definition and market power will inevitably blend together," however. *Id.* The Plaintiffs have presented some evidence that the relevant product market is new mobile homes (although mobile homes are alleged to be the tied, not the tying product).

Where the Plaintiffs' market power evidence disintegrated was with their expert's assertion that the relevant geographic market for mobile home park lots was

---

1. Plaintiffs also presented evidence of an unremitting policy of tie-in, which if accompanied by sufficient market power would also prove actual coercion. *See Hill v. A–T–O,* *Inc.*, 535 F.2d 1349, 1355 (2d Cir.1976). As discussed below, Plaintiffs' evidence of market power is legally insufficient, however.

confined to the City of St. Albans, and/or the surrounding Franklin County, Vermont. The evidence demonstrated that Plaintiffs had looked into housing in Vermont's Franklin and Chittenden Counties, as well as further afield. Ordinarily, discrepancies in the evidence and credibility of witnesses is for the jury to resolve. But the Plaintiffs' expert rendered his opinion that the Lapierres enjoyed market power in the market defined as Franklin County. The Plaintiffs' proposed jury interrogatories, submitted on the same day as the expert's testimony, asked the jury to define the relevant geographic market as Franklin and Chittenden Counties. *See* Pls.' Proposed Jury Interrogs. at 1 (paper 307). When asked on cross-examination whether he could render an opinion about the Lapierres' market power if the relevant geographic market were the two counties, the expert replied that he could not. Using the Plaintiffs' own proposed definition of the geographic market, their sole expert on market power provided no evidence. On this record a reasonable juror has insufficient evidence from which to conclude anything about the relevant product and geographic markets which could result in a verdict for the Plaintiffs.

■ The Plaintiffs have also failed to present sufficient evidence from which reasonable jurors could conclude that there were anticompetitive effects in the market for mobile homes. Because the record shows insufficient evidence of market power to justify a *per se* condemnation of the tying arrangement, Plaintiffs would have to show unreasonable restraint on competition. *Jefferson Parish,* 466 U.S. at 29, 104 S.Ct. 1551. "Establishing a violation of the rule of reason involves three steps," the first of which is that a plaintiff must show "that the challenged action has had an actual adverse effect on competition as a whole in the relevant market." *Clorox Co. v. Sterling Winthrop, Inc.,* 117 F.3d 50, 56 (2d Cir.1997). Plaintiffs' evidence was legally insufficient on this point.

At best, Plaintiffs' evidence consisted of anecdote and speculation from one witness, a competing mobile home dealer. If, arguably, this witness provided some evidence of restraint on competition, there is no evidence whatsoever that the restraint was unreasonable, or that competition in the relevant market as a whole was affected.

■ The Plaintiffs have also failed to present sufficient evidence from which reasonable jurors could conclude that the Plaintiffs have suffered antitrust injury— that they were injured in their business or property by the Lapierres' tying arrangement—or that they sustained damages. Antitrust injury, "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful[,] . . ." "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977).

The Plaintiffs could have met their burden on the issue of antitrust injury by showing economic harm to their property. Although the Plaintiffs alleged that they paid more than they should have for their mobile homes, the evidence is undisputed that they paid less or the equivalent of the appraised value of their property, and that in many cases they were able to sell their property for more than they paid for it. And although the Plaintiffs alleged that their damages should be the amount they paid above "fair free-market prices," plus inflated finance charges, sales and property taxes, they produced no evidence as to what the fair market value of each sited mobile home was, nor any evidence about inflated charges or taxes.

Because of legally insufficient evidence on the elements of market power, anticompetitive effect and antitrust injury, plus damages, the Plaintiffs' federal antitrust claim must be and is dismissed.

*Entrance Fee*

■ With regard to the claim that the Lapierres charged an illegal entrance fee, Section 6238(a) of Title 10 of Vermont Statutes Annotated provides that "[a] prospective resident ... may not be charged an entrance fee for the privilege of leasing or occupying a mobile home lot. A reasonable charge for the fair value of services performed in placing a mobile home on a lot shall not be considered an entrance fee."

In this case the Lapierres did not specifically charge their tenants a fee for the privilege of leasing their lots. The Plaintiffs alleged that an illegal entrance fee was included in the price they paid for their mobile homes. The Plaintiffs produced evidence that the Lapierres recovered a sum from the sale of each mobile home that was sited in their park. The Plaintiffs have testified that the site or location of their mobile homes has a value, but produced no evidence concerning site value. Moreover, the Plaintiffs utterly failed to prove that they paid more than fair market value for their mobile homes. Without any evidence that Plaintiffs paid more than fair market value for their mobile homes, it is impossible for a reasonable juror to conclude that a portion of the price paid was an illegal entrance fee.

*Consumer Fraud*

■ The Plaintiffs also alleged that the Lapierres' conditioning the lease of a mobile home lot on the purchase of a mobile home from a designated dealer violated Vermont's Consumer Fraud statute. Section 2453(a) of Title 9 of Vermont Statutes Annotated prohibits unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce. Section 2461(b) permits a consumer who contracts for goods or services in reliance on, or who sustains damages as a result of, false or fraudulent representations to sue for relief. Vt. Stat. Ann. tit. 9, § 2461(b) (1993). The statute is patterned on Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and courts are to be guided by the construction given its terms. Vt. Stat. Ann. tit. 9, § 2453(b) (1993).

The standard of unfairness under the Federal Trade Commission Act encompasses practices that violate the Sherman Act as well as practices that the Commission determines are against public policy for other reasons. *See Federal Trade Comm'n v. Indiana Fed'n of Dentists*, 476 U.S. 447, 454, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986). The Federal Trade Commission has charged that a tying arrangement between mobile home lots and mobile homes violates the Federal Trade Commission Act. *See Russell v. Atkins*, 165 Vt. 176, 182, 679 A.2d 333, 336 (1996), *citing In re Mobile Homes–Multiplex Corp.*, 94 F.T.C. 151, 156 (1979); *In re MacLeod Mobile Homes, Inc.*, 94 F.T.C. 144, 148 (1979).[2]

The Plaintiffs failed to present legally sufficient evidence of damages, however, and their request for declaratory and injunctive relief has been mooted because the Lapierres are no longer in the business of selling mobile homes, nor have they available vacant mobile home lots. Accordingly, the Plaintiffs lack an actionable claim under the Consumer Fraud Act.

At the close of the Plaintiffs' case, the evidence presented was legally insufficient for a reasonable jury to find for the Plaintiffs on the antitrust elements of market power, anticompetitive effect and antitrust injury. In addition, the Plaintiffs failed to provide legally sufficient evidence of damages, or that they paid an illegal entrance fee. Finally, with insufficient evidence of damages or case for declaratory relief they lack an actionable consumer fraud claim.

---

2. The Court notes that the Plaintiffs have not to date claimed that the proof necessary to judge a tying arrangement illegal under the Federal Trade Commission Act or the Vermont Consumer Fraud statute is less stringent or otherwise different than the necessary proof under the Sherman Act.

Accordingly, the Lapierres' motion for judgment as a matter of law is **GRANT-ED.**

**CASE CLOSED.**