## State of Vermont v. Dan Rolfe, et al.

## State of Vermont v. Jeffrey Allen, et al.
## George Lozier, et al.

[686 A.2d 949]

Nos. 96-033 & 96-163

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed November 1, 1996

*Robert L. Sand*, Department of State's Attorneys, Montpelier, for Plaintiff-Appellant (96-033) and *Robert L. Sand, T. Lamar Enzor*, Rutland County Deputy State's Attorney, Rutland, and *William E. Wargo*, Assistant Attorney General, Burlington, for Plaintiff-Appellee (96-163).

*Robert Appel*, Defender General, and *Henry Hinton*, Appellate Defender, Montpelier, *Susan R. Buchanan*, Public Defender, of *Rubin Kidney Myer & DeWolfe*, Barre, and *Steven Dunham*, Public

Defender, St. Albans, for Defendant-Appellee (96-033).

*Matt Harnett* of *Lorentz, Bloomer & Harnett,* and *A.J. Ruben,* Public Defender, Rutland, for Defendants-Appellants (96-163).

**Dooley, J.** This consolidated interlocutory appeal concerns approximately 100 criminal and civil suspension cases in Rutland, Bennington and Washington Counties, brought against defendants for driving under the influence of alcohol (DUI). In all of these actions, the State seeks to introduce evidence of blood-alcohol content (BAC) from a Datamaster infrared testing device. At issue are: (1) the validity of Vermont Department of Health regulations relating to infrared breath tests, and (2) if the regulations are valid, their effect on the burdens of proof and production in determining the admissibility of infrared breath tests in criminal and civil suspension DUI cases.

■■ We hold that the regulations promulgated by the Vermont Department of Health for infrared testing meet the statutory requirements of 23 V.S.A. §§ 1203(d) and 1205(g). We further rule that the State may lay the foundation for the results of infrared breath tests by showing that the analysis met the performance standards contained in the regulations. A defendant faced with criminal charges or civil suspension may contest these foundation facts, but may not otherwise challenge the test's admissibility. Alternatively, the State may attempt to introduce the test results into evidence under V.R.E. 702. See *State v. Streich,* 163 Vt. 331, 342, 658 A.2d 38, 46 (1995); *State v. Brooks,* 162 Vt. 26, 29, 643 A.2d 226, 228 (1993).

These consolidated cases reach us in similar procedural postures.[1] The cases in Rutland and Bennington District Courts were consolidated under the lead names of *State v. Allen* and *State v. Lozier;* the cases in Washington District Court were consolidated under *State v.*

---

[1] The certified questions from the Rutland and Bennington District Courts are: "(a) Do the Department of Health Rules regarding Infrared Datamaster breath testing comply with the statutory mandate? and (b) Assuming valid regulations, what are the burdens of production and proof in determining the admissibility of Infrared Datamaster breath test results under 23 V.S.A. § 1203(d) and 23 V.S.A. § 1205(g)?"

The Washington District Court raised for interlocutory appeal the following issues: "Does 23 V.S.A. Sec. 1203(d) create a presumption of validity only of a generic method of analysis if properly adopted by regulation, or does it create a presumption of validity of a particular test result if taken and analyzed according to properly adopted regulations and, if so, are the properly adopted regulations sufficient to trigger this broader presumption."

*Rolfe.* All of the cases were consolidated here for purposes of interlocutory review.

In the cases consolidated under *State v. Allen* and *State v. Lozier*, the Rutland District Court concluded that the Department of Health rules met the statutory requirements of 23 V.S.A. § 1203(d) and that a test taken in accordance with those rules was presumptively admissible. In a criminal case, the trial court held that the presumption of admissibility would disappear if the defendant introduces *any* evidence that a test result is not valid. In a civil suspension case, the court held that evidence produced by a defendant would go to the weight of the evidence rather than its admissibility, leading to per se admissibility of infrared tests in civil cases.

The Washington District Court, in *State v. Rolfe*, held that the Department of Health regulations were valid, but also that the statutory presumption in 23 V.S.A. § 1203(d) went only to the method of analysis, that is, infrared spectrophotometry, and not to a particular type of machine or test results. To introduce specific test results into evidence, the court held, the State must establish the reliability of the Datamaster device pursuant to V.R.E. 702, *Streich*, 163 Vt. at 342, 658 A.2d at 46, and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-95 (1993), without the benefit of a statutory presumption.[2]

We reverse *State v. Rolfe.* We affirm in part and reverse in part the trial court decisions in *State v. Allen* and *State v. Lozier.*

## I.

The first issue is whether the rules promulgated by the Department of Health for infrared testing are sufficient to meet the requirements of 23 V.S.A. §§ 1203(d) and 1205(g). This question was not reached in *Brooks*, 162 Vt. at 28, 643 A.2d at 227. We now answer this question in the affirmative.

In 1989, the Legislature amended Vermont's DUI laws in two respects: (1) to allow for use of infrared spectrophotometry, in addition to gas chromatography, to measure blood-alcohol content (BAC); and (2) to allow for summary civil suspension of drivers' licenses. 1989, No. 68, §§ 4, 5 (amending 23 V.S.A. §§ 1203(d), 1205). Section 1203(d) outlines the procedures for determining BAC using an infrared breath-testing instrument, as well as part of the procedure for other methods of analysis. It states, in pertinent part:

---

[2]Because of the specifics of defendants' challenge, the State's burden was actually narrower: to establish the reliability of the software used in the Datamaster device.

In the case of a breath test administered using an infrared breath testing instrument, *the test shall be analyzed in compliance with rules adopted by the department of health.* The analyses shall be retained by the state. A sample is adequate if the infrared breath testing instrument analyzes the sample and does not indicate the sample is deficient. Analysis of the person's breath or blood which is available to that person for independent analysis shall be considered valid when performed according to methods approved by the department of health. The analysis performed by the state shall be considered valid when performed according to a method or methods selected by the department of health. *The department of health shall use rule making procedures to select its method or methods.*

23 V.S.A. § 1203(d) (emphasis added).

Section 1205 establishes a summary procedure for civil suspension of the operator's license of an operator who refuses to submit to a BAC test or whose test results showed a BAC of .08 or more. The operator is issued a notice of suspension and may obtain a hearing in district court. See *id.* § 1205(c), (f). At the hearing, the issues that may be considered are limited to: (1) whether the law enforcement officer had reasonable grounds to believe the person was DUI, (2) whether the officer informed the person of the person's rights at the time of requesting an evidentiary test, (3) whether the person refused to take the evidentiary test, and:

(4) whether the test was taken and the test results indicated that the person's alcohol concentration was 0.08 or more at the time of operating, attempting to operate or being in actual physical control of a vehicle in violation of section 1201 of this title, whether the testing methods used were valid and reliable and whether the test results were accurate and accurately evaluated. *Evidence that the test was taken and evaluated in compliance with rules adopted by the department of health shall be prima facie evidence that the testing methods used were valid and reliable and that the test results are accurate and were accurately evaluated* . . . .

*Id.* § 1205(g)(4) (emphasis added).

On February 15, 1992, to meet the requirements of § 1203(d), the Department of Health adopted rules for performing and reporting

the results of breath and blood-alcohol analyses. They contain sections on definitions, methods for alcohol analysis, and collection and security of samples. According to these regulations, analysis of breath-alcohol concentrations must be performed using the methods of gas chromatography or infrared spectrophotometry. Vermont Dep't of Health, *Breath and Blood Alcohol Analysis*, § C(I) *in* 4 Code of Vermont Rules 13140003-002 (effective 2/15/92) [hereinafter *Breath Analysis Rules*]. The regulations further require:

1. Sampling equipment shall be capable of collecting a sample of expired alveolar air. . . .

2. Analytical instrumentation shall be capable of analyzing replicated samples of breath containing a known amount of alcohol with a precision of plus or minus 5% from their mean when alcohol concentrations are reported to three significant figures.

3. Analytical instrumentation shall be capable of determining the blood or breath alcohol concentration of the person sampled with an accuracy of plus or minus 10%. The calculation of an equivalent blood alcohol concentration from the result of a breath alcohol analysis shall be based on a blood to breath alcohol concentration of 2100:1.

4. Instrumentation shall be capable of determining the breath alcohol concentration of the person sampled within plus or minus 10% where the concentration is expressed as weight percent alcohol per 210 liters of expired air.

5. The analytical instrumentation shall be capable of detecting the presence of potentially interfering compounds which may be present in breath and which may otherwise interfere with accurate determination of an equivalent blood or breath alcohol concentration.

6. The analytical instrumentation and procedures used for analysis of breath alcohol content for evidentiary purposes shall be approved by the Commissioner of Health.

*Id.* There is no dispute that these regulations were adopted in accordance with the Vermont Administrative Procedure Act, 3 V.S.A. §§ 817-849.

Defendants contend that the rules are legally inadequate in three respects: (1) even if they meet the requirements of § 1203(d), they do

not meet the requirements of § 1205(g)(4); (2) they do not include step-by-step procedures for analyzing breath samples as required by § 1203(d); and (3) they improperly delegate authority to the Commissioner of Health to select methods of analysis. We take these claims in order.

Defendants' first argument is that both §§ 1203 and 1205(g)(4) establish rulemaking requirements, but the Department of Health has addressed only the requirements of § 1203. As a result, the department has failed to adopt rules setting standards for taking and evaluating breath samples as required by § 1205(g)(4). The district courts rejected this argument because they concluded that § 1205(g)(4) establishes no rulemaking requirements beyond those set forth in § 1203(d). We agree with this analysis.

The language chosen in the two sections strongly suggests that the rulemaking mandate is contained solely within § 1203. That section is entitled "Administration of tests" and sets forth two unambiguous instances where rulemaking is mandatory. One deals with the preservation of crimper and blood samples and is not involved here. See § 1203(c) ("The department of health shall adopt rules providing for the security of the sample."). The other is in § 1203(d) and provides: "The department of health shall use rule making procedures to select its method or methods." Each time the Legislature intended the department to engage in formal rulemaking, it used clear language to indicate its intent. On the other hand, the language of § 1205(g)(4) imposes no rulemaking mandate; instead, it requires the State to act in a manner consistent with department rules.

In construing statutes, "we look first to the plain, ordinary meaning of the language." *Central Vt. Hosp. v. Town of Berlin*, 164 Vt. 456, 462, 672 A.2d 474, 478 (1995). We construe closely related statutes together as part of one system. See *Trustees of Kellogg-Hubbard Library, Inc. v. Labor Relations Bd.*, 162 Vt. 571, 574, 649 A.2d 784, 786 (1994). We defer to the construction of a statute by the agency responsible for implementing it unless there is a compelling indication of error. See *In re Spring Brook Farm Found.*, 164 Vt. 282, 285, 671 A.2d 315, 317 (1995). These statutory construction principles support the trial courts' conclusion that § 1205(g)(4) imposes no independent and additional rulemaking requirements.

We also find one other factor particularly important to this question. Section 1205(g) governs only civil suspension proceedings; it has no application to criminal DUI proceedings. These civil proceedings

are intended to be "summary" to allow for speedy suspensions of licenses of operators who drive under the influence of alcohol. See 23 V.S.A. § 1205 (entitled "Civil suspension; summary procedure"). Under defendants' theory, the additional regulatory requirements would affect admissibility of breath test results in civil suspension proceedings but not in criminal proceedings. This is an illogical result because it is the civil proceeding, and not the criminal trial, that the Legislature intended to streamline. The irrationality of that result reinforces our conclusion that § 1205(g)(4) imposes no additional rulemaking burden. See *State v. Quinn*, 165 Vt. 136, 140, 675 A.2d 1336, 1338 (1996) (we do not construe statute to reach irrational result).

Defendants' second argument is that the rules are incomplete because they do not contain step-by-step procedures for analyzing breath samples. Defendants find this requirement in the language of the first sentence of § 1203(d): "the test shall be analyzed in compliance with rules adopted by the department of health." In defendants' view, the concept of analysis includes the procedure for doing so and the department misdefined "analysis" in its rules to evade the clear requirement of the statute. See *Breath Analysis Rules* § B(I)(2) *in* 4 Code of Vt. Rules 13140003-002 ("'Analysis' refers to the physical identification and quantification of alcohol within breath or blood samples.").

■ We reiterate that we defer to an agency's interpretation of enabling legislation unless there is a compelling indication of error. Thus, rules implementing that interpretation enjoy a presumption of validity. See *Vermont Ass'n of Realtors v. State*, 156 Vt. 525, 530, 593 A.2d 462, 465 (1991). Section 1203(d) requires that the test be analyzed in compliance with the rules. Like § 1205(g)(4), the first sentence of § 1203(d) does not itself require the department to issue rules.

Even if the first sentence of § 1203(d) were to impose a rulemaking requirement, we would not hold that the current rules fail to implement the statute. The language of the statute does not say that the rules must establish specific procedures. The department interpreted its statutory mandate in § 1203(d) to create performance standards that all instruments must meet. The advantage of this approach is that the rules are generic and do not have to anticipate the operation of many instruments that use infrared spectrophotometry to analyze breath samples. The Legislature clearly intended a less specific approach for infrared testing by providing in § 1203(d)

that a sample would be considered adequate if the infrared testing device did not reject it. Thus, it intended that the machine itself would find and indicate errors, obviating the need to prevent errors by precisely regulating the breath-testing procedure. We conclude that the rules fairly implement the statute and are valid.

Defendants' third argument is that the rules improperly delegate authority to the Commissioner of Health to approve analytical instrumentation and procedures used for analysis of breath-alcohol content. See *Breath Analysis Rules* § C(I)(6) *in* 4 Code of Vt. Rules 13140003-003. The argument is that the delegation violates the rulemaking requirements in the first and next-to-last sentences of § 1203(d), as well as the requirement of § 1205(g)(4).

Our rejection of two of these claims follows from the above discussion. There are no rulemaking requirements in the first sentence of § 1203(d) or in § 1205(g)(4) so the delegation cannot violate them. Also, the delegation in the regulations follows from the choice, discussed above, to adopt performance standards, which are not instrument-specific, and leave it to the commissioner to ensure that any machinery will meet the performance standards. We have upheld the adoption of performance standards as consistent with the statutory mandate. We think that implementation of the performance standards by the commissioner is also authorized.

There remains to be considered the requirement in the next-to-last sentence of § 1203(d) that the department "select its method or methods" by rulemaking procedure. This language was added in 1975, although the concept of "methods" of analysis first appeared in the section in 1973. See 1973, No. 79, § 3; 1975, No. 103, § 1. In context, the word "method" is used primarily to describe the generic method of analysis. Consistent with this interpretation, the current rules select the methods of gas chromatography and infrared spectrophotometry. See *Breath Analysis Rules* § C(I) *in* 4 Code of Vt. Rules 13140003-002.

We acknowledge that the term "method" can have a broader definition. In *State v. Robitaille*, 151 Vt. 380, 384, 561 A.2d 412, 414 (1989), we stated that the department could include the procedures for calculating BAC in its rules to avoid the need to "reinvent the wheel" in each case. Consistent with this broader view of method, the department here included within its approved methods both the type of analysis to be used and the performance standards. No general method is allowed unless the instrumentation employing the method can meet the performance standards. The department went further

and provided that the specific instrumentation and procedures must be approved by the Commissioner of Health. We conclude that the department has fully implemented the statutory mandate.

## II.

The second issue is the effect of valid regulations on the admissibility of infrared breath-test results. The trial courts reached different conclusions on this issue. The Rutland District Court decided as follows:

> Thus, in a criminal DUI prosecution, a breath test result which was analyzed under the rules promulgated by the Department of Health, as required by 23 V.S.A. § 1203(d), is presumptively valid and admissible. The Defendant may rebut that presumption by offering any evidence to show that the test is unreliable, and, therefore, inadmissible. If the Defendant offers such evidence, the presumption of validity disappears and the State must come forward with further evidence that the test is valid and reliable. This inquiry may be done prior to trial, pursuant to V.R.E. 104(a).

> In a civil suspension case, however, the situation is different. If the State shows that the particular test was analyzed according to the rules promulgated by the Department of Health, as required by 23 V.S.A. 1203(d), the test is admissible and the State is not required to produce any further evidence on the validity of the test. The evidence presented by the Defendant to rebut the validity of the test would go to the weight the factfinder gives the test and not to the admissibility of the test itself. This ruling applies only to the admissibility of breath tests.

The Washington District Court ruled:

> What is clear to this Court is that the method of infrared spectrophotometry is a presumptively valid method of breath analysis. 23 V.S.A. § 1203(d). That generic method of breath analysis has been adopted by the Department of Health through proper regulation. . . . Given the presumptive validity of that method of analysis, any evidence to be offered by a defendant as to the lack of reliability of such a generic method of analysis would not preclude admission at

trial, but rather go only to the weight to be accorded to such method by a jury. . . .

There is no similar presumptive validity to the use of the Datamaster infrared breath testing instrument in Vermont, nor to any particular steps used to collect a breath sample and produce a result through that device.

The court did not rule on the effect of § 1205(g)(4) because none of the cases before it were civil suspension proceedings.

In addressing these rulings, we find it easiest to look separately at §§ 1203(d) and 1205(g).

## A.

### 23 V.S.A. § 1203(d)

The statutory language provides that "[t]he analysis performed by the state shall be considered valid when performed according to a method or methods selected by the department of health." 23 V.S.A. § 1203(d). As discussed above, this language was formerly in § 1203(a) and in 1989 was moved to subsection (d). Although this subsection contains specific language on infrared breath testing, it is not limited to such testing. Thus, the sentence before the one we are considering governs independent analysis of "breath or blood" samples by whatever means. As a result, we read the language in question as determining the validity of any analysis of a blood or breath sample by any means. We emphasize this point, because it means that the effect of § 1203(d) on the admissibility of infrared and gas chromatograph breath testing is the same.

The statutory language does not explicitly address admissibility. Like many statutes derived from early versions of the Uniform Vehicle Code, it uses the terminology of validity rather than admissibility. See generally *People v. Adams*, 131 Cal. Rptr. 190, 192-93 (Ct. App. 1976) (analyzing statutes based on Uniform Vehicle Code). Each of the courts that has interpreted this language has, however, found validity to be synonymous with admissibility. See, e.g., *Wester v. State*, 528 P.2d 1179, 1181 (Alaska 1974), *cert. denied*, 423 U.S. 836 (1975) (statute that sets forth prerequisites for validity of chemical analysis specifies "the foundational facts necessary for the admissibility of a chemical analysis of breath"); *State v. Sinclair*, 474 S.W.2d 865, 868 (Mo. Ct. App. 1971) (statute that sets forth when chemical testing is valid provides "statutory substitutes for a common law foundation for

the introduction of evidence of breath analyses for blood alcohol"); *Otte v. State*, 108 N.W.2d 737, 740 (Neb. 1961) (statute that provides when tests are considered valid condition use of test in court on meeting the requirements). Thus, we read the sentence as if it used the term "admissible" rather than "valid" in describing the effect of analysis according to the methods in the health department regulations.

In *Brooks*, 162 Vt. at 29, 643 A.2d at 228, we described the statutory language as creating a "presumption of validity" of infrared breath analysis. In retrospect, we acknowledge that this language has been a source of confusion as trial courts have tried, with great difficulty, to apply presumption rules to questions of admissibility of evidence. Indeed, the shifting burdens of our presumption rules are appropriate to proving facts but have little applicability to questions of evidence admissibility. The more accurate description of the statute is that it sets out the required foundation for admissibility of breath or blood analysis to determine BAC. Other jurisdictions have described similar language in those terms. See *Wester*, 528 P.2d at 1181; *Sinclair*, 474 S.W.2d at 868. Pursuant to V.R.E. 104(a), the question of whether a sufficient foundation exists is for the court.

Both the required foundation and its effect are set out in the statute. As a foundation, the proponent of admission must show that the analysis was "performed according to a method or methods selected by the department of health." 23 V.S.A. § 1203(d). As discussed above, we interpret the words "method or methods" to cover not only the analytic method — for example, infrared spectro-photometry — but also the performance standards that the analysis must meet. With respect to breath analysis, whether by infrared spectrophotometry or gas chromatography, "method" includes the six performance standards currently in the rule as set out earlier in this opinion.

The effect is that the "analysis performed by the state," *id.*, is admissible if the foundation is laid. In this context, "analysis" can refer only to the test result itself. We recognize that the Washington District Court adopted the position that "analysis" must refer only to the validity of the general technology. It reached this decision, however, by holding that the terms "method or methods" referred only to the generic method of analysis, either gas chromatography or infrared spectrophotometry, and concluding that the Legislature did not intend to require the admission of any infrared test result solely because the Department of Health found that the generic method can be accurate.

If the Department of Health had not included the performance standards within the regulation, we would agree with the district court's analysis. However, the inclusion of performance standards in the regulation obviates the district court's concern, and further reinforces our conclusion that the rules are consistent with the statutory mandate. With the performance standards in place, we follow the plain meaning of the statutory wording and conclude that laying the proper foundation makes the test result admissible.

 In summary, § 1203(d) provides that the results of an infrared breath test are admissible if the State shows that the analysis was performed by an instrument that meets the performance standards contained in the rules of the Department of Health, and the instrument met those performance standards while employed to analyze the sample. Defendants are free to offer evidence to contest the foundation facts. They may not otherwise challenge the admissibility of a test result although they may, of course, urge the jury to give it no weight.

## B.

### 23 V.S.A. § 1205(g)(4)

Section 1205(g) governs the issues that may be heard at civil suspension proceedings and includes among them: whether the testing methods were valid and reliable and whether the test results were accurate and accurately evaluated. The section goes on to state that "[e]vidence that the test was taken and evaluated in compliance with rules adopted by the department of health shall be prima facie evidence that the testing methods used were valid and reliable and that the test results are accurate and were accurately evaluated." 23 V.S.A. § 1205(g)(4). The statutory language thus establishes a presumption. See V.R.E. 301(b) (statute providing that one fact is prima facie evidence of another fact establishes presumption).

 The Rutland District Court found that this statute creates a special presumption of admissibility. Nothing in the wording of the statute suggests, however, that the presumption relates to admissibility of evidence. Rather, the language sets up an aid in proving that testing methods were valid and reliable and that the test results were accurate and accurately evaluated by establishing a presumption that these issues are resolved by a showing that the test was taken and evaluated in compliance with Department of Health rules.

The presumption in § 1205(g)(4) operates much like that in § 1205(m), as described in *State v. Pluta*, 157 Vt. 451, 600 A.2d 291 (1991). It shifts the burden of going forward with evidence challenging the test result on the defendant. See *id.* at 453-54, 600 A.2d at 293. To rebut the presumption created by compliance with the rules, the defendant must present more than "a mere theoretical possibility that the presumed fact does not exist." *Id.* at 454, 600 A.2d at 293. The rebuttal evidence must show that the presumed fact — here, the reliability and validity of the testing methods and the accuracy of the test results — is not true "in the particular case, given its actual underlying facts and circumstances." *Id.*

The presumption arises only after the test result is admitted. The standard for admissibility remains that in § 1203(d), except that in the summary proceeding "[a]ffidavits of law enforcement officers and chemists shall be admissible evidence which may be rebutted by witnesses called by either party." 23 V.S.A. § 1205(i). Thus, in the civil suspension proceeding, the foundation facts for admissibility of the test results may normally be established by affidavit.

## III.

In conclusion, we answer the first question from the Rutland District Court in the affirmative; the rules of the Department of Health comply with the statutory mandate. We answer the second question of the Rutland District Court as follows:

> Section 1203(d) affects the admissibility of all blood and breath analysis results in all civil and criminal DUI proceedings by providing that if the court finds that the analysis meets the performance standards contained in section C of the Department of Health rules, the results are admissible.

> Section 1205(g)(4) affects the burden of production of evidence, but not its admissibility, in DUI civil suspension proceedings by establishing a presumption that the testing methods used were valid and reliable and that the test results were accurate and accurately evaluated when the State shows that the test was taken and evaluated in compliance with Department of Health rules.

*State v. Rolfe is reversed; State v. Allen and State v. Lozier are affirmed in part and reversed in part; causes are remanded for proceedings consistent with this opinion.*