**STATE of Vermont v. Kim Marie WELLS**

[779 A.2d 680]

No. 00-485

August 1, 2001. Defendant Kim Wells appeals from a district court decision suspending her driver's license after a

_____

civil suspension merits hearing pursuant to 23 V.S.A. § 1205. She contends that the district court (1) erroneously applied the burden of proof in weighing her claim that the Datamaster breath analysis test does not comply with the performance standards of the Heath Department breath analysis rules, and (2) erred in concluding that the evidence submitted below was sufficient to find that the Datamaster complies with pertinent Health Department breath analysis rules. We affirm.

At approximately 2:15 a.m. on September 2, 1999, a state police officer followed defendant's car, without turning on the emergency lights, until it turned into a school parking lot. He stopped behind it. Defendant stepped out of her car and "walked in a large arc . . . stumbling as she did so." Her speech was slurred, "and her eyes were watery and bloodshot." She admitted to drinking alcohol, and "tested positive for the presence of alcohol on the Alco Sensor preliminary breath screening test. She was unable to complete the walk and turn dexterity test successfully . . . . [S]he failed the one-leg-stand test." Consequently, the officer processed defendant for DWI, and brought her to the police station.

At the station, defendant was read her *Miranda* rights, as well as her implied consent rights pursuant to 23 V.S.A. § 1202. Defendant indicated that she wished to speak to an attorney before deciding whether to take the breath test. She concluded her conversation with an attorney at 3:08 a.m. At 3:59 a.m. defendant gave a breath sample on a Datamaster machine, which registered .128% BAC.

To be considered valid, Vermont Department of Health regulations require all breath-testing devices to measure alveolar, or deep-lung, air. Datamaster devices require the subject to exhale for six to eight seconds to ensure the expiration of deep-lung air. The Datamaster will not accept a breath sample which does not exceed a specified volume, duration and minimum flow rate to ensure that alveolar air is collected.

At defendant's final civil suspension hearing, she contested the validity of the Datamaster testing device, arguing that such devices cannot accurately measure alveolar air. To support her claim, defendant submitted the affidavit of Dr. Michael Hlastala, an expert on pulmonary gas exchange. According to Dr. Hlastala's mathematical modeling, "there is little or no alcohol in alveolar air and . . . any alcohol transported by exhaled breath comes from airway surfaces, not the alveolar area of the lungs." The State submitted the affidavit of Department of Health chemist Ted Manazir, an expert on breath and blood alcohol analysis, the operation of breath-testing devices, and the rate of absorption and elimination of alcohol in the human body. According to Mr. Manazir's affidavit, the Datamaster "analyzes a subject's expired alveolar, or deep lung, air." Both experts agreed that due to changes in air temperature from the lungs to the mouth, the alcohol concentration in exhaled air is lower than that of alveolar air. In other words, the Datamaster under-reports breath alcohol levels.

The court found that the Datamaster machine was working properly when defendant gave her breath sample, and that the sample exceeded the legal BAC limit of 0.08%. The court further found that although "Dr. Hlastala has done extensive theoretical work on the question of alcohol exchange in the human body," his attack on the validity of Datamaster testing was "highly theoretical." The court stated, "Dr. Hlastala characterizes his work as a 'working hypothesis'. . . a theory which is subject to scientific verification and testing." Basing its decision on Mr. Manazir's affidavit, the court found that Datamaster devices measure the alcohol content of expired lung air, and satisfy the Department of Health statutory per-

formance standards. Citing *State v. Pluta*, 157 Vt. 451, 600 A.2d 291 (1991), the court held that defendant's theoretical attack was not sufficient to overcome the statutory presumption of validity set forth in 23 V.S.A. § 1205(h)(4).

On appeal, defendant claims that the court erred in concluding that the Datamaster complied with pertinent Department of Heath rules. According to defendant, the court incorrectly applied a "post-admission" standard in evaluating her evidence contesting the Datamaster's validity in testing expired alveolar air.

Section 1205(h) establishes the framework for the summary procedures of a final civil suspension hearing, limiting the issues to, inter alia:

> whether the [breath] testing methods used were valid and reliable and whether the test results were accurate and accurately evaluated. Evidence that the test was taken and evaluated in compliance with rules adopted by the department of health shall be prima facie evidence that the testing methods used were valid and reliable and that the test results are accurate and were accurately evaluated.

23 V.S.A. § 1205(h)(4). As we explained in *State v. Rolfe*, 166 Vt. 1, 13-14, 686 A.2d 949, 957-58 (1996), evidence of validity provides a foundation for admissibility of the breath test. "Defendants are free to offer evidence to contest the foundation facts." *Id.* at 13, 686 A.2d at 957. The presumption of validity as set forth in the statute "arises only after the test result is admitted." *Id.* at 14, 686 A.2d at 958.

The defendant's theory of error in this case rests on two predicate assumptions. The first is that the court — in evaluating the sufficiency of the State's evidence as well as defendant's evidence challenging the foundational facts regarding the validity and reliability of the breath testing method — gave the State the benefit of a presumption of validity and reliability. The second is that the affidavit of the State's expert submitted to demonstrate that the Datamaster device is a valid and reliable testing method was "conclusory" and therefore an insufficient evidentiary foundation for admissibility of the breath test. We do not accept either of the assumptions that underlie defendant's argument.

Defendant — by parsing ambiguous language in the trial court's decision — contends that the trial court: (a) incorrectly applied the reasoning of *State v. Pluta*, 157 Vt. at 454, 600 A.2d at 293, to the court's evaluation of the evidence of validity and reliability of the breath testing method; and, (b) in so doing, afforded the State a "presumption of admissibility" without which the State could not have established the factual foundation necessary for admissibility of the breath test. Although the trial court did state that "*Pluta* is not limited, either by its express language or implication to post-admissions challenges," the trial court's discussion of the applicability of *Pluta*, taken as a whole, is in the context of determining whether defendant's expert has met the burden of overcoming the statutory presumption of 23 V.S.A. § 1205(h) — that is the presumption that arises only after the test result is admitted. In this regard the trial court notes:

> As in *Pluta*, here the Defendant/operator raises nothing more than "a mere theoretical possibility" with the Hlastala information. She fails to offer any "specific evidence" calling into question the accuracy *of her own test. . . .* The Defendant here has not met her burden with "specific evidence" in *her case* sufficient to overcome the statutory presumption.

(Emphasis added.)

In any event, even if we were to adopt defendant's construction of the trial court's language, a review of the record persuades us that the court did not need the benefit of a presumption to conclude that the State's affidavit was sufficient to establish that the Datamaster testing method is valid and reliable. Notwithstanding defendant's characterization of the State's affidavit as "conclusory," the affidavit provides a sufficient basis for the trial court's determination that the Datamaster meets the Department of Health performance standards for validity and reliability of breath testing methods.* We have previously noted that

---

* Mr. Manazir's affidavit included, in pertinent part, the following statements made under oath:

> Through rulemaking the Department of Health has established performance standards for all breath tests. The Data-Master meets the performance standards because:
> — The DataMaster analyzes a subject's expired alveolar, or deep lung, air.
> — The DataMaster is capable of analyzing replicate samples of breath containing a known amount of alcohol with a precision of plus or minus 5% from their mean when alcohol concentrations are reported to three significant figures.
> — The DataMaster is capable of determining the breath alcohol concentration of the person sampled with an accuracy of plus or minus 10% when the concentration is ex-

in a civil suspension proceeding the foundation facts for admissibility of test results may normally be established by

---

> pressed as weight (CGS) of alcohol per 210 liters of expired air.
> — The DataMaster is capable of detecting the presence of potentially interfering compounds which may be present in breath and which may otherwise interfere with an accurate determination of an equivalent breath alcohol concentration.
> — The DataMaster has been approved by the Commissioner of Health for evidentiary purposes as have the procedures for its use.
> . . . .
> Based upon testing performed within and without the state of Vermont, my knowledge of the scientific literature regarding breath alcohol testing, and my training and experience with the instrument, it is my opinion that the DataMaster is an accurate and reliable instrument for determining the ethyl alcohol concentration of a sample of a person's breath.
> The Datamaster provides a reliable and accurate means for analysis of breath alcohol samples. The reporting of an alcohol concentration of a person's breath by the DataMaster is evidence that the instrument had successfully met all internal and external quality control reviews and had been operating properly at the time the breath sample was analyzed.

affidavit. *Rolfe*, 166 Vt. at 14, 686 A.2d at 958.

Defendant further contends that the evidence below does not support the trial court's findings regarding the Datamaster's "operational characteristics." Mr. Manazir's affidavit contained a sufficient basis for the trial court's factual findings describing the Datamaster's operational capacities. Defendant's generalized claim that the Datamaster "does not, and cannot, capture breath that is alveolar in character" and is therefore neither in compliance with Health Department performance standards, nor "operationally valid," falls short of demonstrating that the reliability and validity of the testing methods and the accuracy of the test results are not there "in the particular case, given its actual underlying facts and circumstances." *Pluta*, 157 Vt. at 454, 600 A.2d at 293. The facts and circumstances of this case, which provide more than an ample basis for suspending the defendant's license, are irrelevant only if the trial court erred in determining that the State presented sufficient evidence from which it could be concluded that defendant's test was taken and evaluated in compliance with rules adopted by the Department of Health. The trial court made no such error.

*Affirmed.*