2004 VT 62

**STATE of Vermont v. Douglas VEZINA**

[857 A.2d 313]

No. 02-472

¶ 1. July 1, 2004. Defendant Douglas Vezina appeals from the trial court's denial of his Motion to Exclude Breath Test Evidence. Defendant argues that his right to a second breath test under 23 V.S.A. § 1202(d)(5) was violated when the arresting officer did not make an attempt to provide an alternative test after the testing instrument's failure to analyze the second breath sample, and that this failure warrants suppression of the first test's results. We affirm.

¶ 2. On April 22, 2002, a Newport police officer found defendant sitting in his parked vehicle on an exit ramp of Interstate 91. After a field sobriety test, defendant was transported to the Newport Police Department, where he was requested to provide an evidentiary breath sample. Defendant's breath sample was collected by a DataMaster Breath Testing Instrument, which reported a BAC of .118%. Defendant then requested a second test as 23 V.S.A. § 1202(d)(5) permits.[1] The officer attempted to perform the second test, but the DataMaster returned a reading indicating "out of range." This message appears when there is an anomaly with the alcohol-water solution contained in the DataMaster's simulator and the testing sequence cannot be run.[2] After the failure of the DataMaster, the arresting officer did not attempt to locate another instrument to conduct a second test. The officer, however, advised defendant of his right to obtain an independent test at his own expense,[3] which defendant declined.

---

[1] The statute provides: "A person who is requested by a law enforcement officer to submit to an evidentiary test administered with an infrared breath-testing instrument may elect to have a second infrared test administered immediately after receiving the results of the first test." 23 V.S.A. § 1202(d)(5).

[2] The simulator is designed to contain a water-alcohol solution at constant temperature to provide a high precision alcohol-air standard. Vermont Justice Training Council, *Infrared Breath Testing Device: Student Manual* (1996). At the beginning of each test sequence, the DataMaster automatically runs a sample for the simulator. If the standard is out of the proper range, the instrument will print a "Simulator Out of Range" message and will not allow further operation until it is serviced and reset. *Id.*

[3] 23 V.S.A. § 1202(d)(4) provides that "[a] person who is requested by a law enforcement officer to submit to an evi-

¶ 3. Defendant filed a motion to suppress the first test result, arguing that suppression is the proper remedy for a violation of defendant's statutory right to a second state-administered test. The trial court denied the motion, reasoning that while the statute provides for a right to a second test, it does not address the consequence of police inability to conduct the test because the instrument itself is indicating that it cannot run a second sequence. The court noted that, unlike the denial of the statutory right to counsel in DUI processing, the circumstances resulting in the officer's inability to provide the second test do not rise to the level of a violation of implied consent rights that would warrant suppression. The court further emphasized that there is no claim of bad faith on the part of the officer, and that defendant was properly advised of his right to seek independent testing. After the trial court denied his motion, defendant entered a conditional plea agreement pursuant to V.R.Cr.P. 11(a)(2), pleading nolo contendere. This appeal followed.

¶ 4. Defendant argues that the court erred in admitting the first breath test because the police failure to procure or attempt to procure an alternative second breath test after the DataMaster's "out of range" reading constitutes a violation of 23 V.S.A. § 1202(d)(5) that warrants suppression. Defendant bases his argument on our holding in *State v. Guidera*, 167 Vt. 598, 707 A.2d 704 (1998) (mem.). In *Guidera*, we refused to suppress the result of a second breath test despite a procedural error by the police officer in obtaining the first breath sample. We noted, however, that "[a]dmitting one valid infrared BAC result is fully

___

dentiary test ... has the right to have additional tests made by someone of the person's own choosing at the person's own expense."

consistent with the statute, even if another BAC result is invalid, *as long as the invalidity does not go to the performance of the instrument*." 167 Vt. at 600, 707 A.2d at 705 (emphasis added). Defendant infers from this language that whenever the testing instrument precludes the administration of a second breath test, admission of the first test result is error requiring suppression. We disagree.

¶ 5. In *Guidera*, we stressed our holding in *State v. Rolfe*, 166 Vt. 1, 686 A.2d 949 (1996), that "'the results of an infrared breath test are admissible if the State shows that the analysis was performed by an instrument that meets the performance standards contained in the rules of the Department of Health, and the instrument met those performance standards while employed to analyze the sample.'" *Guidera*, 167 Vt. at 600, 686 A.2d at 705 (quoting *Rolfe*, 166 Vt. at 13, 686 A.2d at 957). The exception suggested in *Guidera* addresses concerns arising when the instrument's malfunction during one test sequence renders another test result suspect because it raises the question of whether the instrument met the requisite performance standards during the first test. Such concerns are not an issue here. The DataMaster functioned as expected by interrupting the testing process and warning the operator that the instrument should be taken out of service. See Vermont Justice Training Council, *Infrared Breath Testing Device: Student Manual*. Thus, contrary to defendant's suggestion, the fact that the DataMaster was able to detect the problem during the second sequence does not give reason to surmise that the instrument malfunctioned during the first one; rather, it is evidence that, had the problem been present during the first test, the instrument would have not issued a report. See *State v. Wells*, 172 Vt. 603, 606 n.*, 779 A.2d 680, 683 n.* (2001) (mem.) (up-

holding trial court's determination that DataMaster meets Department of Health performance standards for validity and reliability because determination was based on affidavit of a Department of Health chemist, who stated, among other things, that "[t]he reporting of an alcohol concentration of a person's breath by the DataMaster is evidence that the instrument had successfully met all internal and external quality control reviews and had been operating properly at the time the breath sample was analyzed.").

¶ 6. Nevertheless, defendant argues that suppression is warranted here, comparing the violation of § 1202(d)(5) to the violation of the statutory right to counsel in DUI processing provided for in § 1202(d)(4), for which we adopted the remedy of suppression. See *State v. Gilman*, 173 Vt. 110, 119-20, 787 A.2d 1238, 1245-46 (2001) (State's failure to provide suspect with on-call public defender before deciding whether to submit to a breath test mandated suppression of evidence of defendant's refusal); see also *State v. Duff*, 136 Vt. 537, 540, 394 A.2d 1145, 1146 (1978) (breath test suppressed where officer failed to notify defendant of statutory right to counsel); *State v. Madonna*, 169 Vt. 98, 101, 726 A.2d 498, 500 (1999) (suppression affirmed where processing form failed to advise detainee of right to speak with public defender even if detainee is not indigent). Defendant's comparison is inapposite. As we explained in *Gilman*:

> We adopted [the suppression remedy] because we would not allow the State to take advantage of its own violation of the law. The critical point was made in *Duff*: "When a driver makes a complicated decision, without the option of consulting counsel as is his statutory right, he should not be bound by that decision, since he might with

counsel have made it differently." *Duff*, 136 Vt. at 540, 394 A.2d at 1146.

*Gilman*, 173 Vt. at 115, 787 A.2d at 1242. We cannot agree that the DataMaster's inability to produce a second test sequence compares with the irreparable harm caused by the State's actions in denying a defendant's right to counsel during DUI processing, particularly in light of defendant's ability to challenge the instrument's reliability, either by seeking independent testing or by introducing evidence of the "out of range" reading.

¶ 7. It is true that we have recognized that statutory violations other than denial of counsel may also compel suppression. See *State v. Yudichak*, 147 Vt. 418, 421, 519 A.2d 1150, 1152 (1986) (administering blood test, without offering to give a breath test as required by the statute, necessitates suppression of test results). In support of his argument that suppression is warranted here, defendant relies on *State v. McCrossen*, 385 N.W.2d 161 (Wis. 1986), which we cited approvingly in *Gilman* for the proposition that a violation of a statutory right to an elective second breath test warrants suppression of the evidentiary test. *Gilman*, 173 Vt. at 116, 787 A.2d at 1243. This reliance on *McCrossen* is misplaced. The statute at issue in *McCrossen* provides that a DUI suspect "'shall be permitted, upon his or her request, [an] alternative test provided by the agency ... or, at his or her own expense, reasonable opportunity to have any qualified person of his or her own choosing administer a chemical test.'" *McCrossen*, 385 N.W.2d at 165 n.3 (quoting W.S.A. § 343.305(5)). The defendant in *McCrossen* asked for a second test because she could not believe the result of the breathalyzer. She informed the officers that she wanted either a blood or urine test. The officers told defendant

that she would have to pay for it, to which defendant agreed. The officers, however, retained defendant in jail and never administered the requested alternative test. Defendant was never informed that she could be released in order to get an alternative test, or that there was an alternative test that the police department could administer at the department's expense. *McCrossen*, 385 N.W.2d at 163. In sum, this constituted a deliberate violation of defendant's statutory rights that deprived her of a meaningful opportunity to challenge the state's evidence.

¶ 8. In contrast, defendant here was adequately informed of his statutory rights during DUI processing. The processing officer attempted in good faith to comply with defendant's request of a second police-administered test, and defendant was advised of his right to secure independent testing once the DataMaster returned the error message. Therefore, there is no evidence of the deliberate deprivation of statutory rights that occurred in *McCrossen*. In other words, nothing suggests here that the State was trying to benefit from its own violation of the law, which is one of the concerns that we have addressed by adopting the suppression remedy. See *Gilman*, 173 Vt. at 115, 787 A.2d at 1242. We discern no reason to extend the remedy of suppression where, as here, there is no evidence that performance of the instrument affected the validity of the first BAC result, there is no claim of bad faith on the part of the officers, and defendant has been properly advised of his right to additional independent testing.

*Affirmed.*