NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 38

No. 22-AP-216

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Caledonia Unit, |
| | Civil Division |
| | |
| Austin White | April Term, 2023 |

Justin P. Jiron, J.

Claire E. Burns, Caledonia County Deputy State's Attorney, St. Johnsbury, for
  Plaintiff-Appellee.

David C. Sleigh of Sleigh Law, PC, St. Johnsbury, for Defendant-Appellant.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1. **COHEN, J.** Defendant appeals from the civil division's final judgment suspending his driver's license. He argues that the trial court abused its discretion in admitting the results of an evidentiary blood-alcohol test because the State did not offer sufficient evidence to demonstrate that defendant's blood sample was collected and analyzed in compliance with Department of Public Safety (DPS) rules. We conclude that there was an insufficient foundation to allow admission of the test result and therefore reverse and remand for entry of judgment for defendant.

¶ 2. In October 2020, defendant drove his truck off a road in St. Johnsbury, Vermont. The state trooper who arrived at the scene developed reason to believe defendant was impaired by

alcohol. Defendant was treated at Northern Vermont Regional Hospital, and there consented to the withdrawal of a blood sample for alcohol testing.[1]

¶ 3. The Vermont Forensics Laboratory (VFL) analyzed the blood specimen for alcohol content and determined the blood-alcohol content (BAC) to be 0.106 percent at the time of collection. After receiving the VFL report, the trooper served defendant with notice that the Department of Motor Vehicles would suspend his driver's license unless he requested a hearing to contest the allegation by a certain date. Defendant timely requested a hearing and filed a notice of contested issues, including, as relevant here, whether the test was taken and analyzed in compliance with DPS rules.

¶ 4. A final merits hearing was conducted in August 2022. The State's evidence was limited to two exhibits. Exhibit 1 was a template affidavit completed by the responding trooper, including his observations and narration of the incident. Exhibit 1 also included an unsworn, signed report from the VFL summarizing the results of its analysis of defendant's blood sample, addressed to the state police barracks. Exhibit 2 was an affidavit of a VFL chemist, providing her assumptions, inputs, and relation-back analysis of defendant's blood sample.

¶ 5. Defendant raised various objections to admission of the exhibits and to the blood-test result based on an alleged lack of foundation in these exhibits. As relevant here, defendant's counsel argued essentially that the trooper's only reference to the DPS rules was his affirmation that "[t]he sample was obtained pursuant to the Vermont Department of Public Safety rules," and that this was inadequate to demonstrate that the blood test complied with all the applicable DPS

---

[1] We note that "Vermont law regarding DUI explicitly favors breath testing over blood testing." State v. Giguere, 2017 VT 40, ¶ 8, 204 Vt. 483, 169 A.3d 778. However, blood testing is appropriate "[i]f breath testing equipment is not reasonably available or if the officer has reason to believe that the person is unable to give a sufficient sample of breath for testing or if the law enforcement officer has reasonable grounds to believe that the person is under the influence of a drug other than alcohol." 23 V.S.A. § 1202(a)(2). Here the trial court found that blood testing was lawful under the circumstances, and defendant does not challenge that determination on appeal, so we do not address it.

rules and therefore could not provide a foundation for admission of the blood-test result. Counsel explained:

> [W]e object to the conclusory statement at the top of page 4 of the same affidavit. The statement purports that the blood sample was obtained pursuant to the Vermont Department of Public Safety Rules, but there's no evidence to support that assertion made by the trooper. The affidavit doesn't explain or express which particular rules were complied with or demonstrate how those rules were complied with, or even demonstrate how the trooper knew that these rules were complied with.
>
> Additionally, there's no affidavit or statement from the nurse who obtained this blood sample, describing how that nurse obtained the sample and how that collection process was in compliance with the rules of the Vermont Department of Public Safety. Therefore, the State could not prove that the sample was, in fact, collected in compliance with the rules beyond the officer's statement that they were. That is very much unsupported by his affidavit.

¶ 6. The court overruled the objection, reasoning that the plain terms of 23 V.S.A. § 1203(d) do not require anything more than a "conclusory" statement of compliance with DPS rules. Similarly, defendant's counsel objected that the VFL report's only reference to DPS—that "[a]nalysis of the sample for ethanol was performed by gas chromatography, a method approved by the Commissioner of Public Safety for this purpose"—was conclusory and insufficient to demonstrate compliance with the rules. The court again overruled the objection:

> Well, it's sort of like the other rule we talked about, whether under the statute indicating that if there's evidence that the—a test was taken or analyzed—in this case, analyzed in compliance with rules adopted by Department of Public Safety, whether that statement at the bottom of—or partway down under the analysis summary saying that it was performed by gas chromatography, a method approved by the commissioner of public safety complies with the statute. I mean, it does reference the commissioner of public safety and the method approved by the commissioner of public safety. So it doesn't actually specifically talk about the rules, but I do find that it does present some evidence that it was—that the method was used, according to the commissioner of public safety's rules.

3

The court admitted the blood-alcohol test results, found that the State had proved the requirements under 23 V.S.A. § 1205 for a civil license suspension by a preponderance of evidence, and ultimately entered judgment in the State's favor.

¶ 7. On appeal, defendant argues that the court erred in admitting the test results because the State failed to provide the requisite foundation for admissibility—that the blood-sample analysis was performed in compliance with all applicable DPS rules. In general, we review evidentiary rulings for abuse of discretion. State v. Eldert, 2015 VT 87, ¶ 14, 199 Vt. 520, 125 A.3d 139. We note, however, that in civil-suspension proceedings the Rules of Evidence are not applied strictly. V.R.C.P. 80.5(f)(3) ("Evidence is admissible if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs, and the Vermont Rules of Evidence are inapplicable except for the rules respecting privilege.").

¶ 8. To obtain a judgment against defendant, the State was required to prove the elements set forth in 23 V.S.A. § 1205(h)(1)(A)-(E) by a preponderance of evidence. See 23 V.S.A. § 1205(j) (providing that State has burden of proof by preponderance of evidence). Defendant contested, among other things, that the State established the following element: "the test was taken and the test results indicated that [his] alcohol concentration was above a legal limit [at the time he was operating the vehicle], whether the testing methods used were valid and reliable, and whether the test results were accurate and accurately evaluated." Id. § 1205(h)(1)(D). The State needed to have defendant's test results admitted to prove this element.

¶ 9. Section 1203(d) of Title 23 provides that "a breath, saliva, or blood test . . . shall be analyzed in compliance with rules adopted by the Department of Public Safety" and that "[t]he analysis performed by the State shall be considered valid when performed according to a method or methods selected by the Department of Public Safety." In State v. Rolfe, we interpreted this provision as establishing an admissibility standard for test results, recognizing that "valid" means

4

"admissible" in this context.[2] 166 Vt. 1, 11-12, 686 A.2d 949, 956-57 (1996); see also State v. Burnett, 2013 VT 113, ¶ 17, 195 Vt. 277, 88 A.3d 1191 ("The threshold for admissibility is set by § 1203(d)."). Thus, to have test results admitted into evidence, the State must lay a foundation to demonstrate that the sample was analyzed consistent with DPS rules. Rolfe, 166 Vt. at 13, 686 A.2d at 957 ("[L]aying the proper foundation makes the test result admissible."). Under Rolfe, this foundational evidence must show not only that the test was performed using an approved analytic method, such as gas chromatography, but also that the testing adhered to the performance standards established in the agency rules for that method. Id. at 12, 686 A.2d at 957 ("[W]e interpret the words 'method or methods' [in § 1203(d)] to cover not only the analytic method— for example, infrared spectrophotometry—but also the performance standards that the analysis must meet.").

¶ 10.    Although Rolfe and its progeny focused primarily on breath testing, defendant argues that that the same legal framework applies to blood testing. Given the plain statutory language, we agree that § 1203(d) applies equally to blood tests and breath tests. See 23 V.S.A. § 1203(d) ("In the case of a breath, saliva, or blood test, the test shall be analyzed in compliance with rules adopted by the Department of Public Safety . . . . The analysis performed by the State shall be considered valid when performed according to a method or methods selected by the Department of Public Safety." (emphasis added)); see also Rolfe, 166 Vt. at 11, 686 A.2d at 956 (interpreting virtually identical statutory language "as determining the validity of any analysis of a blood or breath sample by any means"). Thus, to provide a proper foundation for admission of blood-test results, the State must show that the sample was analyzed by gas chromatography according to the performance standards established in the DPS rules. See Breath and Blood

---

[2] When we decided Rolfe, the testing rules were administered by the Department of Health. Following a legislative amendment, they are now under the purview of the Department of Public Safety. See 2011, No. 56, § 14. The relevant statutory language has not meaningfully changed.

Alcohol Analysis § D, Code of Vt. Rules 28 060 002, http://www.lexisnexis.com/hottopics /codeofvtrules.

¶ 11.    Here, the State submitted no foundational evidence to demonstrate compliance with any of these performance standards.  The chemist's affidavit describes her training for gas chromatography, but the affidavit contains no reference to gas-chromatography instrumentation, its capabilities, or whether the method or methods were actually complied with during the analysis. The trooper's affidavit does not discuss the analytical method or instruments in any way except to note that the VFL report is attached to his affidavit.  The VFL report states that the blood sample was analyzed by gas chromatography and provides the results of the blood-alcohol analysis, but it says nothing about whether the analysis was "performed according to a method or methods approved by the Department of Public Safety."  23 V.S.A. § 1203(d).  Without any foundational evidence addressing the performance standards of the analytical instrumentation, the court had no basis to find that the "analysis was performed by an instrument that meets the performance standards contained in the rules of the Department of [Public Safety], and the instrument met those performance standards while employed to analyze the sample," and therefore could not properly admit the test results.  Rolfe, 166 Vt. at 13, 686 A.2d at 957.

¶ 12.    We note that although the trial court determined that the State had employed a DPS-approved analytic method, i.e., gas chromatography, it did not specifically determine whether the analytical instrumentation met the performance standards established by rule.  The trial court thus failed to apply part of the admissibility standard established in Rolfe.  Normally we would remand for the trial court to make such a preliminary determination regarding admissibility using the correct legal standard in the first instance.  See State v. Massey, 169 Vt. 180, 188, 730 A.2d 623, 629 (1999) ("Questions of admissibility of evidence are for the court, see V.R.E. 104, and involve the discretion of the trial judge.").  But doing so in this case would serve no purpose because the record is devoid of foundational evidence regarding performance standards.

6

¶ 13.    We emphasize the narrowness of our decision today.  We are not deciding the level of detail necessary in the State's foundational evidence for admitting blood-test results.  The trial court may, or may not, be correct as a general matter that a conclusory statement of compliance with 23 V.S.A. § 1203(d) will suffice.  We need not reach that inquiry because the State did not meet that minimal burden here.

¶ 14.    Because the State failed to present an adequate foundation to admit the results of defendant's blood-alcohol test into evidence, the court erred by admitting and relying on that evidence.  The State therefore could not prove an essential element, 23 V.S.A. § 1205(h)(1)(D), and the judgment in the State's favor cannot stand.

Reversed and remanded for entry of judgment for defendant.

FOR THE COURT:

_____

Associate Justice