NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 40

No. 2016-297

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Essex Unit, |
| | Criminal Division |
| | |
| Renee P. Giguere | February Term, 2017 |

Michael R. Kainen, J.

Gregory Nagurney, Deputy State's Attorney, Montpelier, for Plaintiff-Appellant.

Corby A. Gary of The Law Office of Corby A. Gary, St. Johnsbury, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **REIBER, C.J.** This driver's license suspension case stems from the State's accusation that defendant had been driving under the influence (DUI) before she crashed her car and was transported to the nearest hospital, which was located in New Hampshire. The State appeals the trial court's judgment in favor of defendant, which was based on the court's determination that defendant's refusal to provide a blood sample to the investigating Vermont state trooper must be suppressed because breath testing equipment was reasonably available. On appeal, the State argues that there should have been no suppression because breath testing equipment was not reasonably available. We agree and therefore reverse and remand.

¶ 2.    Defendant is a New Hampshire resident.  Shortly after midnight on October 18, 2015, she crashed her car while driving on Route 114 in Canaan, Vermont, near the border with New Hampshire.[1]  A United States Border Patrol agent was the first on the scene.  The agent observed not only the smell of alcohol but also that defendant was slurring her speech.  Defendant told the agent that she did not know what happened leading up to the crash, but she also admitted to having consumed alcohol that evening.  Concerned that defendant had suffered a head or neck injury, the agent requested an ambulance, and defendant was transported to Upper Connecticut Valley Hospital (UCVH) in Colebrook, New Hampshire.

¶ 3.    Shortly thereafter, a Vermont state trooper arrived at the crash scene, and the agent told the trooper about his observations of defendant.  The trooper then drove to UCVH, encountering defendant at roughly 1:48 a.m. in the emergency room.[2]  He noticed that she had "bloodshot, watery eyes" and "[t]here was still an odor of intoxicants coming from her person."  The trooper administered some field sobriety tests, and defendant told him that "she had approximately two beers and a glass of wine."  The trooper concluded that he "had reasonable grounds to believe that she was under the influence while operating a vehicle."  But the trooper did not request a breath sample—he testified that (1) he was not permitted to use New Hampshire testing equipment; (2) he would have had to bring defendant back to Vermont to use equipment at either the police station in Canaan, the barracks in St. Johnsbury, or the barracks in Derby; and (3) he was not permitted to arrest defendant in New Hampshire.

---

[1]  In an affidavit, the Vermont state trooper involved in this case indicated that he estimated defendant's time of operation to be 12:20 a.m.

[2]  Defendant was discharged from UCVH at 2:04 a.m., and defendant's mother arrived to pick her up at 2:27 a.m., as the trooper was finishing up his interaction with defendant.

2

¶ 4.     Moreover, the trooper also testified that he did not have easy access to the breath testing equipment at the police station in Canaan,[3] which had been locked for the night: "I'm not sure if it was—on that date if it was operating or functional, if I was going to have access to it. I didn't have a key to it. I would have to get somebody to open it for me." Furthermore, as to the person who did have the key—Canaan's police chief—the trooper testified, "We had already called him that night and he was out of town and unavailable." And other than the equipment in Canaan, the closest Datamaster DMT was at the barracks in St. Johnsbury or the barracks in Derby, both "between an hour, an hour and a half" away. With these considerations in mind, the trooper did not even ask defendant to accompany him back to Vermont for a breath test. Instead, he requested a blood sample from defendant, and defendant refused without explanation.

¶ 5.     The trooper cited defendant for DUI-1 in violation of 23 V.S.A. § 1201(a) ("A person shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway: (1) when the person's alcohol concentration is 0.08 or more . . . ."). Eight days later, the trooper served defendant with a notice of intention to suspend under 23 V.S.A. § 1205. The court held a preliminary civil suspension hearing on November 17, 2015, and a final civil suspension hearing on January 19, 2016. On July 26, 2016, the court issued judgment in favor of defendant because it determined that defendant's refusal to provide a blood sample to the trooper must be suppressed.

¶ 6.     The court concluded "on this narrow set of facts" that "breath testing equipment was reasonably available" and that the trooper "assumed from the start[] that he was getting blood." It explained that the trooper could have taken defendant from UCVH back to Vermont but that the trooper did not explore that option. The court specifically found that there was "no indication that [defendant] posed any threat" and that the trooper "could have asked her if she would voluntarily

_____

[3] This breath testing equipment, like the equipment located at the St. Johnsbury and Derby barracks, is known as a "Datamaster DMT."

3

take a ride with him." The trooper then could have transported defendant back to the police station in Canaan, but the trooper erroneously "did not make inquiry as to whether he could use [the equipment] because he did not plan to bring her back." Alternatively, the court said, the trooper could have transported defendant to the St. Johnsbury or Derby barracks, both of which definitely would have had breath testing equipment available.

¶ 7. On appeal, the State argues that breath testing equipment was not reasonably available because (1) it was not possible to obtain a breath sample within two hours of the crash and (2) the trooper had no legal means of transporting defendant back to Vermont for a breath test. In reviewing the judgment, we review the court's factual findings for clear error and the court's legal conclusions de novo. State v. Dubuque, 2013 VT 3, ¶ 8, 193 Vt. 180, 67 A.3d 238 ("In reviewing a motion to suppress, we will defer to the trial court's findings of fact unless they are clearly erroneous. We review the court's legal conclusions de novo."); see also State v. Spooner, 2012 VT 90, ¶ 11, 192 Vt. 465, 60 A.3d 640 (noting in appeal of dismissal of driver's license suspension complaint that "the trier-of-fact is in the best position to determine the weight and sufficiency of the evidence presented" (citation omitted)). We agree with the State and hold that breath testing equipment was not reasonably available, in large part due to the difficulties pointed out by the State.

¶ 8. Vermont law regarding DUI explicitly favors breath testing over blood testing. See Dubuque, 2013 VT 3, ¶ 3 ("Vermont law favors breath tests over blood tests . . . ."); State v. Yudichak, 147 Vt. 418, 419, 519 A.2d 1150, 1151 (1986) (noting that "the legislature has expressed its preference for breath testing over blood testing"). It provides that any driver on its highways impliedly consents to a breath test to determine his or her blood alcohol content:

> Every person who operates, attempts to operate, or is in actual physical control of any vehicle on a highway in this State is deemed to have given consent to an evidentiary test of that person's breath for the purpose of determining the person's alcohol concentration . . . .

4

23 V.S.A. § 1202(a)(1). And if breath testing equipment is not reasonably available, then Vermont law provides that the driver impliedly consents to a blood test:

> If breath testing equipment is not reasonably available . . . the person is deemed to have given consent to the taking of an evidentiary sample of blood.

23 V.S.A. § 1202(a)(2). By these statutes, then, a trooper may require a blood test from a driver under the circumstances presented here only if breath testing equipment is not reasonably available. See Dubuque, 2013 VT 3, ¶ 10 ("[A] person is deemed to give consent to a blood test when the breath-testing equipment is not reasonably available.").

¶ 9. As a preliminary matter, it is important to note that the trooper would not have been permitted to administer a breath test in New Hampshire because Vermont law prevents him from operating the breath testing equipment used in New Hampshire. Unless prohibited by the laws of the neighboring state, Vermont law allows law enforcement officers to request a breath or a blood sample in a neighboring state. It also specifies that evidence of the breath or blood sample must not be suppressed merely because it was taken outside of Vermont:

> A Vermont law enforcement officer <u>shall have a right to request a breath or blood sample in an adjoining state</u> or country under this section unless prohibited by the law of the other state or country. If the law in an adjoining state or country does not prohibit an officer acting under this section from taking a breath or blood sample in its jurisdiction, <u>evidence of such sample shall not be excluded</u> in the courts of this State solely on the basis that the test was taken outside the State.

23 V.S.A. § 1203(h). However, Vermont law also details that a breath test may be administered only by someone who is certified to operate the specific equipment being used. See id. § 1203(a) ("A breath test shall be administered only by a person who has been certified by the Vermont Criminal Justice Training Council to operate the breath testing equipment being employed."). Here, the trooper testified that he did not satisfy this requirement because he was not authorized to operate the breath testing equipment in New Hampshire: "[I d]id not have access to a Datamaster—

5

I was now in New Hampshire and I'm not authorized to operate one in the State of New Hampshire." Therefore, to administer a breath test legally, the trooper would have had to transport defendant back to Vermont.

¶ 10.    As the court pointed out, the trooper had a few potential options for administering a breath test to defendant in Vermont: taking defendant to the police station in Canaan or taking defendant to the St. Johnsbury or Derby barracks.  Because the trooper did not ask, we do not know if defendant would have agreed to return to Vermont voluntarily.  New Hampshire law provides that a police officer from another state who enters New Hampshire "in fresh pursuit . . . of a person in order to arrest him or her on the ground that he or she is believed . . . to have driven a motor vehicle . . . while under the influence of intoxicating liquor or a controlled drug in such other state, shall have the same authority to arrest and hold such person in custody . . . ." N.H. Rev. Stat. Ann. § 614:1.  But New Hampshire law also specifies that "fresh pursuit . . . shall not necessarily imply instant pursuit, but pursuit without unreasonable delay." Id. § 614:5.  In this case—although it is not entirely clear—the time between the trooper's dispatch and his arrival at UCVH could be considered "unreasonable delay." Id.  Moreover, even if the trooper were permitted under New Hampshire's "fresh pursuit" law to arrest defendant, the trooper would have had to wait for "the issuance of an extradition warrant by the governor of [New Hampshire]" before transporting defendant back to Vermont. Id. § 614:2.

¶ 11.    And this potential delay is important in light of the evanescent nature of blood alcohol testing.  When considering whether breath testing equipment is reasonably available, we must keep in mind the fact that blood alcohol content decreases with time, and blood alcohol testing is therefore time-sensitive. See Dubuque, 2013 VT 3, ¶ 9 ("In evaluating whether breath-testing equipment was reasonably available, we must bear in mind the time-sensitive nature of blood-alcohol evidence.  As time goes by, the blood alcohol content (BAC) declines.  We have termed this the 'evanescent nature' of blood alcohol evidence.").  For this reason, Vermont law

6

provides for a two-hour window establishing that if a driver's blood alcohol concentration tests at .10 percent or more within two hours of operation, there is a permissive inference that the driver was under the influence while operating the vehicle. 23 V.S.A. § 1204(a)(2) ("If the person's alcohol concentration at any time within two hours of the alleged offense was 0.10 or more, it shall be a permissive inference that the person was under the influence of intoxicating liquor . . . ."); see also Dubuque, 2013 VT 3, ¶ 9 ("The Legislature has recognized the necessity that an evidentiary test be timely by allowing a permissive inference that a test result of .10 or greater 'within two hours' of operation shows operation under the influence of alcohol.").

¶ 12. Whether the trooper would have been able to administer a breath test within the two-hour window is not dispositive of whether breath testing was reasonably available; it is merely one important factor in the analysis. Even if the trooper were able to transport and test defendant at either the Canaan police station or the St. Johnsbury or Derby barracks within two hours of the crash, neither option was "reasonably available." The Canaan police station was locked, and the person who had the key was out of state, and the St. Johnsbury and Derby barracks were both an hour to an hour-and-a-half away. At best, the trooper would have had to spend time tracking down a key to the Canaan police station, or he would have had to transport defendant all the way back to other available breath testing equipment in Vermont, all assuming he could gain defendant's consent to return to Vermont without New Hampshire process. And the strength of the evidence of defendant's blood alcohol concentration would continue to diminish while the trooper took these steps—the probative value of the breath test would be decreasing and the permissive inference of the two-hour window could even be lost.

¶ 13. Given these difficult circumstances, it cannot be said that breath testing equipment was reasonably available. See Dubuque, 2013 VT 3, ¶ 10 ("The statute does not require law enforcement to make every possible effort to take a breath sample before requesting a blood sample; rather, it states that a person is deemed to give consent to a blood test when the breath-

7

testing equipment is not reasonably available.").  We must conclude on this set of facts that defendant impliedly consented to a blood test, and her refusal to provide a blood sample should not have been suppressed.  See 23 V.S.A. § 1202(a)(2).

Reversed and remanded.

FOR THE COURT:

_____

Chief Justice